**KENAN et al. v. BOWERS, Collector of Internal Revenue.**

District Court, S. D. New York.

Oct. 27, 1930.

Root, Clark & Buckner, of New York City (George E. Cleary, of New York City, of counsel), for plaintiffs.

Charles H. Tuttle, of New York City (Walter H. Schulman, of New York City, of counsel), for defendant.

FRANK J. COLEMAN, District Judge.

The principal question presented is whether the taxpayer, Mary Flagler Bingham, was entitled to a deduction of $308,-860.69 from her gross income of 1917 because of her payment of that amount to the trustees of her deceased husband's estate as compensation for their services. The husband, Henry M. Flagler, had died in 1913 leaving all his property, valued at about $26,000,000, in trust for a period of five years with the power in the trustees to extend the term for an additional five years in their discretion. He nominated three trustees who qualified, but in 1915, one of them having died, it became necessary to obtain a substitute. The will limited the compensation of the trustees to $5,000 a year each, which was entirely disproportionate to the labor and responsibility involved; consequently the widow agreed at the time the substitute was appointed in 1915 that they should receive $400,000 in 1918 as additional compensation. Instead of abiding by the terms of that agreement, she voluntarily advanced the date of payment and in 1917 out of her personal funds paid the item in dispute $308,860.69, on account of their additional compensation. Since she reported on a cash basis she deducted the entire amount from her gross income for that year, but the Treasury Department refused to allow any part of it as an expense item and collected an additional tax of approximately $165,000 on account of it, which plaintiffs now seek to recover.

The widow was vitally interested in the proper administration of the trust, not only because she was practically the sole beneficiary, but also because her personal funds were to some extent involved in a railroad and a hotel company controlled by the trustees. The trust estate consisted in part of 105,000 shares out of a total of 125,000 shares of the capital stock of the Florida East Coast Railway Company, and the remaining 20,000 shares were owned by the widow personally. Also she owned bonds of the railroad in the

amount of $1,775,000, and had loaned to the trustees an additional $875,000 for the use of the railroad and of the hotel company of which the trust estate owned the entire capital stock and outstanding securities.

Her beneficial interest in the estate included both principal and income. Disregarding certain negligible bequests the will provided that she was to receive the entire corpus at the termination of the trust, and so much of the income as was not used in developing the properties owned by the estate. More specifically, the will directed that during the first five years she be paid an annuity of $100,000, the balance of the income to be used in developing the various properties; and that during the remainder of the term in addition to the annuity she be paid all the income not needed in the business enterprises.

The services for which the widow agreed to pay additional compensation were to be rendered entirely to the trust estate and not to her personally or to her individual property. They thus had no direct but a very large indirect value to her. Furthermore, this value had relation to her interest in the corpus of the trust estate rather than to her income from it or from her individual property. The services did, of course, to some extent bear on her income from both the trust estate and from her individual property, because her annuity of $100,000, her share of the trust income during the extended period of the trust and her dividends and interest from the stock and bonds of the railroad, which she individually owned, might have been affected by a maladministration of the trust. But that result would be inconsiderable and almost negligible in comparison with the effect upon the corpus of the trust. The trustees had been given very wide powers in the development and administration of the properties, and during the first five years the bulk of the trust income was to be returned to the properties and to become part of the corpus, with power in the trustees to continue to do so in their discretion during any extension of the term. The conclusion must be drawn, therefore, that, in agreeing to pay the additional compensation, the widow had as her principal purpose the protection and development of the corpus of the trust estate, including the accumulations, and only incidentally the protection of her individual property and of her income from it and from the trust.

The statute controlling is the Revenue Act of 1916 (39 Stat. 759) section 5 of which reads as follows:

"Sec. 5. That in computing net income in the case of a citizen or resident of the United States—

"(a) For the purpose of the tax there shall be allowed as deductions—

"First. The necessary expenses actually paid in carrying on any business or trade, not including personal, living, or family expenses;

"Second. All interest paid within the year on his indebtedness;

"Third. Taxes paid within the year imposed by the authority of the United States, or its Territories, or possessions, or any foreign country, or under the authority of any State, county, school district, or municipality, or other taxing subdivision of any State, not including those assessed against local benefits;

"Fourth. Losses actually sustained during the year, incurred in his business or trade, or arising from fires, storms, shipwreck, or other casualty, and from theft, when such losses are not compensated for by insurance or otherwise: Provided, That for the purpose of ascertaining the loss sustained from the sale or other disposition of property, real, personal, or mixed, acquired before March first, nineteen hundred and thirteen, the fair market price or value of such property as of March first, nineteen hundred and thirteen, shall be the basis for determining the amount of such loss sustained;

"Fifth. In transactions entered into for profit but not connected with his business or trade, the losses actually sustained therein during the year to an amount not exceeding the profits arising therefrom;

"Sixth. Debts due to the taxpayer actually ascertained to be worthless and charged off within the year;

"Seventh. A reasonable allowance for the exhaustion, wear and tear of property, arising out of its use or employment in the business or trade. * * *"

The only pertinent part is the clause denominated "First," the subsequent clauses being set forth merely for their possible bearing upon its construction. From the wording of that clause it is apparent that the payment to the trustees was not deductible unless it was a necessary expense as distinguished from a capital expenditure and unless it was made in carrying on the business of the taxpayer, Mary Flagler Bingham. It should be borne in mind that there were two separate entities involved, one the trust estate and, the other, Mrs. Bingham. It may be assumed

that, had the payment been made by the trust estate, it would have been deductible from the latter's gross income as a necessary expense of carrying on the estate's business. The difficult questions now presented are whether the payment was made in carrying on the business of Mrs. Bingham, and, if so, whether it was not a capital expenditure rather than a necessary expense.

It was in its general nature a business and not a personal or family transaction. On the other hand, Mrs. Bingham had no "business or trade" in the narrow sense. She had an individual estate valued at about $34,-000,000 exclusive of her interest in the trust and took some part in the management of that; but she in no way participated in the management of the trust estate.

The plaintiffs contend that there are two grounds for holding that the payment was made in carrying on the business of Mrs. Bingham; (1) that it was made in the management of income producing property which Mrs. Bingham equitably owned and (2) that the business of managing and developing the trust property was the business of Mrs. Bingham individually because the trustees were virtually her agents. Both these contentions are based upon the theory that the distinction between the two entities should be disregarded, and that in this action at law the court should consider the trust property as virtually hers, even though there were some minor beneficiaries.

Legally, the trust property belonged to the trustees and not to Mrs. Bingham, and the management of it was their business and not hers. They were not her agents and had no power to bind her individually. The federal income tax statutes gave them the status of independent taxpayers, requiring them, not only to report the entire income of the trust estate, but to pay the tax upon it though they were allowed to deduct from the gross income of the estate so much as was distributed to the beneficiaries. Federal Income Taxation, Klein, pages 1134, 1137, 1138, 1156. The case, therefore, presents a situation where one taxpayer voluntarily paid an item that might have been a deductible expense of another taxpayer and was actuated to do so by economic reasons relating to an indirect and somewhat remote financial benefit to the payor.

Cases are cited where the Board of Tax Appeals has considered somewhat similar situations and has either allowed or disallowed the deduction. I exclude those cases relating to partnerships because in them neither the common law nor the tax statutes recognize the same distinction between two separate entities. In Le Blanc v. Commissioner, 7 B. T. A. 256, and in Re Harold Mortenson, 3 B. T. A. 300, the Board allowed a stockholder to deduct from his own gross income the payment of an item which might have been an expense of the corporation; but in Charles Lesley Ames v. Commissioner, 14 B. T. A. 1067, and Hal E. Roach v. Commissioner, 20 B. T. A. 919 (September 1930) the Board refused a similar deduction. There probably cannot be a rigid rule established because the taxpayer's "business or trade" has been held to be a very elastic expression applicable to much more than the continuous course of conduct usually connoted by those words. On the other hand, under all the circumstances of this case I believe it would be stretching the meaning too far if the deduction in question were permitted, since Mrs. Bingham neither owned the property upon which the services were to be expended, nor would receive as income, even indirectly, the fruits of those services, except to a negligible extent. As in Commissioner v. Marshall Field, 42 F.(2d) 820, 823, decided by the Circuit Court of Appeals of this circuit in July, 1930, the payment must be held to "fall within those general costs of protecting one's property for which the statute makes no allowance."

If the above conclusion is correct, it is unnecessary to consider whether the payment by Mrs. Bingham should be considered an expense or a capital expenditure. The services for which the compensation was paid were to cover at least five and perhaps ten years and were related to the corpus of the estate rather than to the taxpayer's income. Though she reported on a cash basis, there are strong reasons for not permitting her to deduct this entire amount in one year, particularly when certain details of the transaction are considered which have not yet been mentioned. Her original agreement with the trustees made in 1915 did not make her personally liable for the additional compensation, but provided that the trustees "shall receive from my share of said estate in full compensation for the services * * * the sum of $400,000 in addition to the sum of $5,000 per year * * * the said sum of $400,000 to be paid at the expiration of five years from May 24, 1913 and said persons * * * shall be entitled to credit themselves with said sum in accounting with me at the termination of said trust." The payment which she actually made in 1917 gave her no greater right of deduction than would a payment under the original agreement be-

cause it was voluntarily made by her and did not secure for her or for the estate anything which had not already been secured by the original agreement. The actual payment was therefore not a "necessary" one, except in so far as it was made on account of the original agreement and the latter tends to indicate that the expenditure was to be a capital one, rather than an expense.

As to the other items sought to be deducted from that year's gross income, there can be no question. The $485.01 paid for clerk hire and the $250 paid for the rent of a safe in the management of Mrs. Bingham's individual income-producing property were plainly deductible. As to whether certain dividends amounting to $24,355 should be included in the gross income for 1917 rather than 1916, the defendant makes no opposition, and the plaintiff's contention is therefore allowed.

Settle findings on notice.