**DART v. COMMISSIONER OF INTERNAL REVENUE (two cases).**
**Nos. 3665, 3666.**

Circuit Court of Appeals, Fourth Circuit.

Jan. 8, 1935.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

George D. Gibson and Henry W. Anderson, both of Richmond, Va. (Frank J. Albus, of Washington, D. C., and Hunton, Williams, Anderson, Gay & Moore, of Richmond, Va., on the brief), for petitioners.

Helen R. Carloss, Sp. Asst. to the Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

NORTHCOTT, Circuit Judge.

This is a petition for review of decisions of the United States Board of Tax Appeals. The opinion of the Board will be found in 29 B. T. A. 125.

The appeals involve the income tax of Joseph A. Dart for the year 1928 in the amount of $6,366.51 and the income tax of Elizabeth C. Dart, his wife, for the year 1927 in the amount of $10,840.68, and are taken from orders of redetermination of the Board of Tax Appeals entered December 2, 1933. Elizabeth C. Dart died subsequent to the Board's decision, and her administrator, Joseph A. Dart, was substituted as a party before the Board. Petitions for review were filed March 1, 1934, pursuant to the provisions of sections 1001–1003 of the Revenue Act of 1926, c. 27, 44 Stat. 9, as amended by section 1101 (a) of the Revenue Act of 1932, c. 209, 47 Stat. 169 (26 USCA §§ 1224–1226).

There is no dispute as to the facts. Joseph A. Dart is a citizen and resident

846

of Richmond, Va. During 1928, Dart maintained various accounts with brokers who traded on the New York Exchange. The transactions of the taxpayer in the buying and selling of stocks during 1928 involved hundreds of purchases and sales. The total selling price of stock sold during that year was $56,945,192.51. Many of the accounts which Dart maintained with his brokers were what is known as "short" accounts. On these "short" accounts the brokers from time to time credited the taxpayer with interest on the credit balance of the account. During 1928, the interest credited by the various brokers to the different accounts operated by the taxpayer amounted to $160,857.30. This amount was reported as income by the taxpayer.

If at any time while the taxpayer was "short" on a given stock a dividend was declared on that stock, the broker would charge the account of the taxpayer with an amount equal to the dividend. During 1928 there was charged against the account of the taxpayer by brokers, with respect to dividends declared on stock on which the taxpayer was "short," the sum of $136,-252.

The parties agreed that, in the event the Board should hold that the amount of $136,-252 was a proper direct income deduction, the net income of the taxpayer for 1928 should be reduced by the amount of $23,320, or the difference between $136,252 and $112,932.

During 1928 dividends were credited to the accounts of the taxpayer in the amount of $983,688.95. The Commissioner included this amount as income of the taxpayer for 1928. During the same year interest of $1,612,240.64 was charged against the taxpayer and the amount allowed as a deduction.

The facts in regard to Elizabeth C. Dart's case are similar except as to the amounts involved. Her transactions in the buying and selling of stock during 1927 involved a large number of purchases and sales; the total selling price of stock sold during that year being $3,456,302.50. During 1927 the interest credited by brokers to her different "short" accounts was $142,158.44, which has been included in the taxpayer's income by the Commissioner.

In 1927 there was charged against her account, with respect to dividends declared on stock on which the taxpayer was "short," an amount of $151,800. It had been agreed that, in the event that the Board should hold

that the amount of $151,800 was a direct income deduction, the net income of the taxpayer for 1927 should be reduced by the amount of $79,050, which is the difference between $151,800 and $72,750.

During 1927, dividends were credited to the taxpayer's accounts in the amount of $76,015, and were included in income. Interest was charged against her in the amount of $81,648.33, and was allowed as a deduction.

The only question involved is whether the taxpayers, engaged in the business of buying and selling securities, who sold certain stock "short" through brokers, may deduct as ordinary and necessary expenses charges made to their accounts by the brokers for dividends paid by such brokers on certificates that were borrowed for delivery to the purchaser, or whether such charges should be postponed and added to the cost of the stock subsequently purchased to complete the transaction, in determining the gain or loss.

Section 23 (a) of the Revenue Act of 1928 (26 USCA § 2023 (a), provides in part that:

"In computing net income there shall be allowed as deductions:

"(a) Expenses. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. * * *"

The same provision appears in the Revenue Act of 1926 as section 214 (a) (1), 26 USCA § 955 (a) (1).

Article 101, Regulations 69, and article 121, Regulations 74, provide that: "Business expenses deductible from gross income include the ordinary and necessary expenditures directly connected with or pertaining to the taxpayer's trade or business. * * * The cost of goods purchased for resale, with proper adjustments for opening and closing inventories, is deducted from gross sales in computing gross income. * * * Among the items included in business expenses are management expenses, commissions * * * supplies * * * advertising and other selling expenses. * * * A taxpayer is entitled to deduct the necessary expenses paid in carrying on his business from his gross income from whatever source. * * *"

No portion of the $136,252 was allowed Joseph A. Dart as a direct deduction from income by the Commissioner. The Commissioner treated the charges for the dividends

declared while the stock was being held "short" as additional cost of the stock purchased to cover the "short" sale, and by the use of this method determined an additional cost for stock sold in 1928 in the amount of $112,932.

The same ruling was made by the Commissioner in Elizabeth C. Dart's case, except as to the amounts involved, and on appeal the Board of Tax Appeals sustained the action of the Commissioner. The Board found as a fact that "both J. A. Dart and Mrs. J. A. Dart were engaged in the buying and selling of securities as a business during the taxable years involved, but that they were not dealers."

The mechanics of what is known as "short" sales on the New York Stock Exchange are outlined in the case of Provost v. United States, 269 U. S. 443, 46 S. Ct. 152, 154, 70 L. Ed. 352.

It is admitted on behalf of the Commissioner that in case of a "long" transaction dividends and interest are not deferred for tax purposes until such time as the transaction is closed. All dividends received and interest paid in a "long" transaction enter into the computation for the year in which they occur, but it is contended that a different rule should apply to a "short" sale; that, while all interest received on credit balances in the hands of the brokers should be charged as income to the taxpayer for the year in which received, the expenditure equal to the dividends declared on the borrowed stock should not be credited as expense, but that this accounting should be deferred until the transaction is finally closed. We do not think this contention is sound, and can see no reason why one rule should obtain in a "long" transaction and another rule in a "short." As we said in the case of Bonded Mortgage Co. v. Commissioner, 70 F.(2d) 341, both sides of the ledger must be treated alike.

It is argued that the expenditure of the amount equal to the dividend is in the nature of a capital expenditure and adds to the value of the stock when purchased to close the "short" transaction. We do not see how any value could be added to something which is not in existence. The "short" seller owns no stock, and has none of the rights of a stockholder because of the borrowed stock. As was said by the Supreme Court in the case of Provost v.

United States, supra: "* * * Neither the lender nor the borrower retains any interest in the stock which is the subject-matter of the transaction and which has passed to and become the property of the purchaser. Neither the borrower nor the lender has the status of a stockholder of the corporation whose stock was dealt in, nor any legal relationship to it. Unlike the pledgee of stock who must have specific stock available for the pledgor on payment of his loan, the borrower of stock has no interest in the stock nor the right to demand it from any other."

The amount paid out in the "short" transaction can in no way add to the value of stock which the taxpayer does not possess at the time of the payment, and in no way benefits him when he ultimately purchases the stock to close the transaction. The expenditure is one made solely for the purpose of continuing to hold the borrowed stock and is not an incident to ownership but an expense paid in order to maintain the taxpayer's position in the market with respect to that particular transaction.

It is also contended that, while dealers are allowed to deduct expenditures of this character in the year in which they are made, a different rule should apply to those who, while engaged in the business of trading in stock, are not dealers. We do not think there is any merit in this contention. Subsection (a) (1) of section 214 of the Revenue Act of 1926 and (a) of section 23 of the Revenue Act of 1928 make no distinction as between dealers and others who are engaged in carrying on a trade or business, nor do we see why any distinction should be made. As we said in Colony Coal & Coke Corp. v. Commissioner, 52 F.(2d) 923, the real test is the character of the transaction that occasions the payment.

It cannot be gainsaid that the expenditures in question here were usual in all "short" sales and that they were ordinary and necessary in that character of transactions. It seems to us equally clear that they were expenses paid during the taxable year in order to carry on the business of making the "short" sales, and were in no sense capital expenditures.

The determinations of the Commissioner and the findings of the Board of Tax Appeals were erroneous, and the decisions of the Board are accordingly reversed.