**DU PONT v. DEPUTY, Collector of Internal Revenue.**

District Court, D. Delaware.

Feb. 21, 1938.

Aaron Finger (of Richards, Layton & Finger) of Wilmington, Del., James S. Y. Ivins, Percy W. Phillips, and Laurence Graves (of Ivins, Phillips, Graves & Barker), all of Washington, D. C., for plaintiff.

John J. Morris, Jr., U. S. Atty., of Wilmington, Del., Mason B. Leming, E. J. Dowd, and T. H. Lewis, Jr., Sp. Attys., Bureau of Internal Revenue, all of Washington, D. C., James W. Morris, Asst. to Atty. Gen., Department of Justice, and Andrew D. Sharpe and Lester L. Gibson, Sp. Assts. to Atty. Gen., Department of Justice, for defendant.

BIGGS, Circuit Judge.

The plaintiff, Pierre S. Du Pont, has sued Willard F. Deputy, Collector of Internal Revenue for the District of Delaware, pursuant to the provisions of section 3226 of the Revised Statutes, as amended by Act June 6, 1932, c. 209, § 1103(a), 47 Stat. 286, 26 U.S.C.A. §§ 1672–1673, to recover income taxes assessed against the plaintiff for the year 1931, in the amount of $142,466.79, together with interest thereon in the amount of $29,884.85, comprising a total of $172,351.64.

At the time of the trial a stipulation, duly entered into by the parties, was filed with this court, whereby it was agreed by the defendant that the plaintiff was entitled to a judgment of $54,439.52 upon one of the issues involved herein and would be entitled to a judgment in the sum of $172,-351.64 if he was held to be successful upon the questions presented by the remaining issue.

That issue can be stated broadly as follows: Is the plaintiff entitled to certain deductions claimed by him in computing his net income for the taxable year in question, viz., 1931? To understand the question presented it is necessary to give a brief statement of the facts involved.

Following the end of the World War, the plaintiff, as an individual the largest beneficial owner [1] of the stock of the E. I. Du Pont De Nemours & Company, aware that the company would be compelled by changing circumstances to engage in business other than the manufacture of explosives, felt, as did other responsible heads of the company, that a new management should be put in charge of its peace-time affairs. As a result, a new executive committee, comprising nine members, was created. The responsible officers of the Du Pont Company, including the plaintiff, felt it to be essential that these nine men should be compensated not only by way of salaries and bonuses, but also that each of them should have that interest in the future success of the company best achieved by stock ownership. It was first proposed that the nine executives should receive each 1,000 shares of the stock of the company as compensation for future services, but since the law of Delaware forbade such a course, another plan was worked out, as follows: After discussion and the agreement of all concerned, the plaintiff undertook to sell to the nine committeemen each 1,000 shares of the common stock of the Du Pont Company, at an agreed price just under book value, viz., at a price of $320 per share. [2]

[1] An individual as distinguished from a corporate holding. The Christiana Securities Company had the largest single holding of the Du Pont Company stock.

[2] The book value was shown to be $320.94 a share.

It should be noted that the transaction referred to occurred before the listing of the stock of the Du Pont Company under the New York Stock Exchange. Testimony was given at the trial of this cause indicating that the market for the common stock of the Du Pont Company was very thin and the purchase of the 9,000 shares would have augmented substantially ·the price per share. The Du Pont Company loaned to each of the committeemen the necessary funds to purchase his aliquot portion of the stock, and the plaintiff received the purchase price stipulated by him. In short, the plaintiff sold 9,000 shares of the common stock of the Du Pont Company to the nine committeemen at a price of $320 a share and received the proceeds therefrom.

The sale just described was a short sale, for at this time the plaintiff was not the legal owner of sufficient stock to consummate the transaction. He was, however, the president and a director of Christiana Securities Company and · the holder of a very substantial block òf the stock of that company. Pursuant to contract entered into between the plaintiff and the Christiana Company upon December 23, 1919, this company loaned to the plaintiff 9,000 shares of the common stock of the Du Pont Company, which were in fact the shares sold by him to the members of the executive committee. By the agreement just referred to the Christiana Company required that the 9,000 shares of stock so loaned by it to the plaintiff should be paid back to it in kind within 'ten years and, further, that the plaintiff pay to the · Christiana Company sums equivalent to all dividends which might be paid by the Du Pont Company upon the 9,000 shares of stock so loaned until the loan was repaid. It should be here noted that the directors of the Christiana Company· in the resolution authorizing the loan of the stock to the plaintiff recited that Christiana Securities Company was the principal stockholder of the Du Pont Company and as such was deeply interested in the success of that company. The contract of December 23, 1919, was modified subsequently to the extent that the plaintiff was required to reimburse and did in fact reimburse the Christiana Company for federal income taxes imposed upon that company by reason of the receipt of the dividends upon the 9,000 shares of stock paid to it by the plaintiff in accordance with the contract. [3]

By March 9, 1921, the stock of the Du Pont Company had declined largely in value. The bargain made by the nine committeemen had become a disadvantageous one and was the subject of considerable discussion. In a memorandum from Irenee Du Pont to the plaintiff, written about March 10, 1921, the 'following appears: "From the Committeemen's point of view, each has made a bad bargain. From the Company's point of view, the bargain was a bad one, because certainly a majority of the Committeemen are more or less disturbed over their financial condition * * *." The plaintiff thereupon, by letters written by him to each of the committeemen, made plain that he had no intention of making any profit upon the sale of the 9,000 shares of Du Pont Company stock to them and proposed to assign to each of the committeemen 400 shares of stock of the Christiana Company, possessing value of $160,000, but with an option reserved in the plaintiff to enable him to redeem these shares by payment of the sum of $160,000 to the committeemen at the time of the maturity of the loans made to them by the Du Pont Company and heretofore referred to. This offer was accepted by the committeemen, and the stock of the Christiana Company was assigned to them by 'the plaintiff in accordance with the terms of the letters.

As the ten-year period, dating from December 23, 1919, drew to a close, the plaintiff, upon October 25, 1929, entered into an agreement with Delaware Realty & Investment Company whereby that company undertook to loan to the plaintiff the necessary shares of Du Pont common required by him to repay his loan of stock to the Christiana Company. It should be here noted that the contract of October 25, 1929, between the plaintiff and the Delaware Company, recited that the plaintiff was not "at this time contemplating the closing of the short sale transaction of December, 1919. * * *"

The terms of the plaintiff's contract with the Delaware Company provided that he would return the Du Pont Company stock borrowed from it in kind within ten years after October 25, 1929, would pay to it an amount equivalent to all dividends de-

---

[3] Though there were other modifications from time to time as required by the declaration of stock dividends by the Du Pont Company, these modifications are not pertinent to the legal questions involved.

clared by the Du Pont Company upon the shares borrowed, and would reimburse the Delaware Company for all taxes paid by it by reason of the receipt by it from the plaintiff of the sums equivalent to the dividends declared upon the stock borrowed. In 1931, the taxable year in question, the plaintiff paid to the Delaware Company the sum of $567,648, being the amount equivalent to the dividends paid by the Du Pont Company upon the shares for which he was then indebted. [4] In addition thereto, the plaintiff paid to the Delaware Company the sum of $80,063.56, which was in fact the amount of federal income tax imposed upon the Delaware Company by reason of the payments equivalent to the sum of declared dividends which it had received from the plaintiff. The total of these two items, $647,711.56, is the amount of the deduction to which the plaintiff claims he is entitled in the suit at bar. Whether the plaintiff is or is not entitled to such deduction is the precise issue here presented.

The facts in the case at bar have been largely stipulated and no pertinent facts, other than what may be described as the intent or purpose of the plaintiff in embarking upon the course of conduct and the transactions here involved, are in controversy.

### The Questions of Law Presented.

The plaintiff makes five contentions. They may be summed up as follows: The sums claimed by way of deduction are deductible because there were (1) ordinary and necessary business expenses; (2) losses sustained during the taxable year, 1931, incurred in the plaintiff's business; (3) payments required to be made by the plaintiff as a condition to the continued use of property in which the plaintiff had no equity; (4) interest on the indebtedness of the plaintiff; or (5) if not losses sustained in the plaintiff's business, were losses in a transaction entered into by the plaintiff for profit. If any one of these five contentions is deemed to be valid by the court, the plaintiff must prevail.

The pertinent statutory provisions are contained in section 23 of the Revenue Act of 1928, 45 Stat. 799, 26 U.S.C.A. § 23 and note, and are set out hereafter:

"§ 23. Deductions from gross income.

"In computing net income there shall be allowed as deductions:

"(a) Expenses. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

"(b) Interest. All interest paid or accrued within the taxable year on indebtedness, except on indebtedness incurred or continued to purchase or carry obligations or securities (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest upon which is wholly exempt from the taxes imposed by this title. * * *

"(e) Losses by individuals. In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

"(1) if incurred in trade or business; or

"(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; or

"(3) of property not connected with the trade or business, if the loss arises from fires, storms, shipwreck, or other casualty, or from theft."

*(1) and (2) A. Were the Amounts Paid by the Plaintiff Ordinary and Necessary Expenses, or Losses Incurred in the Plaintiff's Business within the Taxable Year?*

Since the questions presented under this heading are largely analogous, it seems appropriate to discuss the cases relating to both grounds as if they were in a single category, pointing out, however, the pertinent distinctions that occur in each case in relation to the case at bar.

---

[4] I. e., 141,912 shares, the plaintiff having returned 300 shares in 1929. It should be borne in mind that shares of the common stock of the Du Pont Company had been augmented from time to time by stock dividends until the original 9,000 shares reached a total of 142,212 shares.

For the plaintiff to avail himself of the deduction upon either ground herein suggested by him, the sums paid by him must be held to be ordinary and necessary expenses paid or incurred in carrying out the plaintiff's trade or business, or losses incurred in his trade or business, falling respectively within the provisions of subsection (a) or subsection (e) (1) of section 23 of the Revenue Act of 1928, 45 Stat. 799, 26 U.S.C.A. § 23 and note.

It is conceded that the plaintiff was not a dealer or trader in securities and that he was not one who devoted his time to buying and selling securities through brokers as a matter of speculation. He contends, however, that he "* * * was engaged in the business of managing, protecting and conserving his investments, involving many millions of dollars." The record establishes the facts that the plaintiff had the largest beneficial interest of any single individual in the Du Pont Company, was chairman of its board, was a stockholder in General Motors Corporation, in which the Du Pont Company was also a stockholder, was a director of General Motors Corporation, and had other varied and substantial interests. It is contended by the plaintiff that the word "business," as used throughout the statute as quoted, will embrace the plaintiff's activities and that the expenditures of the sum of $647,711.56, claimed as a deduction from the plaintiff's gross income, was an essential part of the plaintiff's business activity.

The plaintiff's position may be summed up succinctly by the following statement appearing upon his brief: "He (the plaintiff) believed that it was good business and that he would profit by the sale of stock to members of the executive committee. He felt that he was making them partners in the business (of the Du Pont Company) and that because of his large interest in the company he would be naturally benefited." While the plaintiff himself testified only that he believed in the policy of paying the men who were responsible for the conduct of the Du Pont Company's affairs good salaries and,

if possible, giving them an interest in the company as stockholders, none the less we believe that the statement from the plaintiff's brief, quoted above, sets out his position and that this conclusion is a fair inference to be drawn from the record as a whole. In this connection it should be noted that the plaintiff stated to Walter S. Carpenter, one of the committeemen, by his letter of April 1, 1921,[5] that it was his purpose to recognize the work done by the committeemen for their company and to encourage them in further efforts to benefit themselves and the other stockholders by placing them in a position to share in corporate profits. In short, the plaintiff felt that by benefiting the members of the executive committee he would benefit the corporation and himself as a stockholder of the corporation. Other motives may have actuated the plaintiff's course of conduct. As former president of the Du Pont Company, and as chairman of its board of directors, he had contributed substantially to the success of the company in the past. He doubtless, therefore, had a sentimental interest in its future welfare, but I think it is true and I find it to be a fact that the governing motive, intent, and purpose behind the plaintiff's whole course of conduct was to enhance the value of his financial interest in the Du Pont Company.

Now if the plaintiff is to recover upon either of the theories here referred to, he must bring his expenditures within the definition of ordinary and necessary expenses resulting from, or losses incurred in his business. The word "business" has been defined by the Supreme Court in Flint v. Stone Tracy Co., 220 U.S. 107, 171, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas. 1912B, 1312, in such a way as to embrace nearly any activity; more narrowly in Von Baumbach v. Sargent Land Co., 242 U.S. 503, 515, 37 S.Ct. 201, 61 L.Ed. 460, wherein it was stated that a decision of this question must turn upon the particular facts of each case.

In Dart v. Commissioner, 4 Cir., 74 F.2d 845, dividends charged by brokers to the "short" accounts of taxpayers en-

---

[5] In this letter the plaintiff stated in part: "While no plan of readjustment by E. I. duPont de Nemours & Company, representing the body of stockholders, has seemed possible, I, as a large stockholder, and, perhaps, the one to be most benefited by the recovery in value of the Company's shares, suggest the following modification of the original transaction:" There follows the details of the terms of the donation of the Christiana Company stock to the committeemen by the plaintiff.

gaged in speculating in stocks were held to be deductible as ordinary and necessary expenses pursuant to the provisions of section 23 (a) of the Revenue Act of 1928, 26 U.S.C.A. § 23 and note, and therefore not chargeable as capital expenditures. It should be noted that here the charges which were allowed as deductions grew directly out of the speculations of the claimants and that the court held in effect that speculation in securities, or the buying and selling of securities, was the business of the taxpayers.

In Kenan v. Bowers, D.C., 48 F.2d 263, the court held, interpreting section 5 of the Revenue Act of 1916 (39 Stat. 759), that a beneficiary of a trust estate could not deduct from her individual gross income additional compensation paid by her to the trustees because she did not own the property upon which the services were expended and would receive only a negligible part of the fruits of the trustees' labors in respect to that property. This holding is to the effect that the protection of a trust estate is not the business of a cestui que trust and that therefore the payments made by the taxpayer did not stem directly out of the taxpayer's business.

In Commissioner v. Field, 2 Cir., 42 F. 2d 820, 823, it was held that the payment of compensation to attorneys in a suit to determine a taxpayer's rights in an estate fell within those general costs of protecting property for which the statute made no allowance.

In Foss v. Commissioner, 1 Cir., 75 F. 2d 326, 328, it was held that a taxpayer, compelled by reason of his business activities in respect to two certain corporations to expend attorneys' fees to defend himself in a suit brought by the minority stockholders of one such corporation, might deduct these fees as ordinary and necessary expenses pursuant to the provisions of section 214(a) (1) of the Revenue Act of 1918, 40 Stat. 1066. The court stated: "The line [of demarcation as to deductible and nondeductible expenses] comes between those who take the position of passive investors, doing only what is necessary from an investment point of view, and those who associate themselves actively in the enterprises in which they are financially interested and devote a substantial part of their time to that work as a matter of business." This is in effect a holding that the extent of the business activity of the taxpayer constitutes the test of deductibility of expenditures. But it should be pointed out that in the cited case expenditures arose directly out of the business activities of the taxpayer.

In Commissioner v. People's Pittsburgh Trust Company, 3 Cir., 60 F.2d 187, it was held that money expended by a taxpayer for attorney's fees in the successful defense of a criminal suit based upon an alleged false affidavit made by him as chairman and principal executive head of a steel company were deductible under the provisions of section 214(a) (1) of the Revenue Act of 1921, 42 Stat. 239, as ordinary and necessary expenses incurred in carrying on a trade or business. In this case the court held that these expenses were directly attributable to the taxpayer's business which was stated to be that of an executive head of a steel company.

■ The cases cited seem to set forth a common principle, namely, that an expense is deductible by the taxpayer if it arises *directly,* that is to say *proximately,* out of the course of business which the taxpayer is regularly carrying on and can fairly be described as an "ordinary and necessary" expense thereof. This principle was clearly enunciated by the Supreme Court in Kornhauser v. United States, 276 U.S. 145, 153, 48 S.Ct. 219, 220, 72 L.Ed. 505, wherein a taxpayer, a lawyer, who successfully defended an accounting suit brought by his former partner for an accounting for shares of stock which the taxpayer had received for professional services, was allowed to deduct a fee for the counsel defending the suit. The Supreme Court stated that the correct basis of such holding was "where a suit or action against a taxpayer is directly connected with, or * * * proximately resulted from, his business, the expense incurred is a business expense within the meaning of section 214(a), subd. 1, of the act."

.. Bearing in mind the principle enunciated by the Supreme Court that expenses may be deducted if proximately resulting from or directly connected with a business, I deem it desirable at this point to refer to certain cases dealing with losses attempted to be deducted as incurred in a trade or business.

In Goldberg v. Commissioner, 59 App. D.C. 147, 36 F.2d 551, it was held that a loss, sustained by the taxpayer in a business transaction resulting from the pur-

chase and subsequent sale by the taxpayer of a house, was not deductible as a loss occurring in a "regular trade or business" within the provisions of section 204(a) of the Revenue Act of 1921, 42 Stat. 227, 231. Here, though the taxpayer was president, treasurer, and sole stockholder of a corporation which was engaged regularly and constantly in the purchase and sale of real estate, the court held that when the taxpayer made a purchase and sale of real estate on his own account, such was not within the scope of his ordinary business.

In Rogers v. United States, Ct.Cl., 41 F.2d 865, 868, a physician, having invested his earnings in a stock transaction which resulted in a loss, was not allowed to deduct this loss as resulting from "any trade or business regularly carried on" by him within the provisions of section 204 (a) and (b) of the Revenue Act of 1921 because the court was of the opinion that this loss resulted from an isolated business transaction despite the fact the physician devoted much of his time to conserving and maintaining his estate. The court treated his efforts in this direction as an "avocation."

In Washburn v. Commissioner, 8 Cir., 51 F.2d 949, 954, it was held that a taxpayer, who sold at a loss stock of a corporation which he was managing, could deduct such loss as being incurred in a business regularly carried on by him within the provisions of section 204 (a) and (b) of the Revenue Act of 1921. The court stated: "We think the line here is not difficult to draw. The business of petitioner was not merely looking after investments or reaping the return of past labor represented thereby. He had an office with a complete organization, and gave personal attention to, and participated in, the management of these various companies and enterprises in which he had the investments, not for the purpose of conserving them merely, but of carrying them on successfully and making them profitable. To this he gave his entire time, receiving no salary, except such as might cover his expenses. His work for these different enterprises was not merely sporadic, but was a continuous and regular carrying on." In the cited case the court distinguishes between the business of conserving an investment and enlarging it; in effect stating that he who makes an investment more profitable by devoting most or all of his time to it may avail himself of a deduction, where he who seeks to conserve an investment by sporadic devotion of his time and energy to that end cannot be favored by the statute.

But in my opinion the decision in Washburn v. Commissioner, supra, has been overruled by the decision of the Supreme Court in Burnet v. Clark, 287 U.S. 410, 53 S.Ct. 207, 208, 77 L.Ed. 397, in which a taxpayer who was the majority stockholder and president of a corporation incurred substantial losses by reason of his purchase of its stock and by his endorsement of its notes. He claimed these losses as deductions under sections 204 (a) and (b) of the Revenue Act of 1921. In delivering the opinion of the Supreme Court, Mr. Justice McReynolds said: "The respondent was employed as an officer of the corporation; the business which he conducted for it was not his own. There were other stockholders. And in no sense can the corporation be regarded as his alter ego, or agent. He treated it as a separate entity for taxation; made his own personal return; and claimed losses through dealings with it. He was not regularly engaged in indorsing notes, or buying and selling corporate securities. The unfortunate indorsements were no part of his ordinary business, but occasional transactions intended to preserve the value of his investment in capital shares."

In Dalton v. Bowers, 287 U.S. 404, 53 S.Ct. 205, 206, 77 L.Ed. 389, the taxpayer formed a corporation for the purpose of manufacturing and selling articles patented by him. He purchased all of the capital stock of the corporation and took active charge of its affairs. The business proved unprofitable and from time to time he made loans to the corporation to pay its debts. He attempted to deduct the losses thus occurring to him as "attributable to the operation of a trade or business regularly carried on" by him within the meaning of section 206(a) and (b) of the Revenue Act of 1924, c. 234, 43 Stat. 253, 260. The Supreme Court held that the trade or business of the corporation was not a trade or business carried on by the taxpayer and the losses so sustained by him were not deductible. Very similar in legal effect is the decision in Mastin v. Commissioner, 8 Cir., 28 F.2d 748, 753, in which the taxpayer paid for advertising real estate owned by a corporation in

which he was a stockholder and sought to deduct the sums thus paid as losses under section 214(a) of the Revenue Acts of 1918 (40 Stat. 1057), and 1921 (42 Stat. 227). The court stated: "The payment was therefore made, not by petitioner to advertise his own real estate, not by the corporation to advertise real estate owned by it, but by petitioner as a voluntary one. It was, in our opinion, a capital expenditure, which might enhance the value of petitioner's stock by increasing the value of the lands of the corporation. It was not a loss within the meaning of the statute under discussion."

See, also, Burnet v. Commonwealth Improvement Company, 287 U.S. 415, 53 S.Ct. 198, 77 L.Ed. 399, Van Dyke v. Helvering, 291 U.S. 642, 54 S.Ct. 437, 78 L. Ed. 1040, and McGinn v. Commissioner, 9 Cir., 76 F.2d 680, 99 A.L.R. 564.

■ In my opinion the sums paid by the plaintiff cannot be deducted by him from his gross income as ordinary and necessary expenses incurred by him in carrying on his trade or business for two reasons:

First, the sums paid by the plaintiff cannot be brought within the principle enunciated by the Supreme Court in Kornhauser v. United States, supra. The plaintiff made the payments in question for the same reasons that actuated his entire course of conduct, viz., because he hoped that he might profit through the enhanced value of the stock of the Du Pont Company beneficially owned by him. This was his hope, his expectation, and though eminently reasonable and well sustained by subsequent events, none the less it is obvious that there is no proximate causation, or direct connection, between the payment by the plaintiff of the sums to the Delaware Company here sought to be deducted by him and the enhancement of the stock ownership of the plaintiff in the Du Pont Company. In fact, one might bring the payment of funds by the plaintiff one stage closer to the ultimate result sought by him, without rendering such sums deductible. For example, if the plaintiff, out of his own pocket, had increased the pay of chemists employed by the Du Pont Company with the hope that by reason of such increase they would work more effectively to improve the processes of the Du Pont Company, perhaps thereby increasing the value of the plaintiff's stock, I conceive that it would not be contended that these payments would be deductible by the plaintiff from his gross income under the theory here advanced by him.

Second, the expenditures here in litigation cannot be deemed to be ordinary and necessary. The course of conduct evoking them was in fact so extraordinary as to occur in the lives of ordinary business men not at all, and in so far as this record shows in the business life of the plaintiff but once. As was said by Mr. Justice Cardozo, in Welch v. Helvering, 290 U.S. 111, 114, 54 S.Ct. 8, 9, 78 L.Ed. 212: "There is nothing ordinary in the stimulus evoking it, and none in the response." The payments here in question were beyond the norm of general and accepted business practice. In this sense they must be deemed to be extraordinary.

■ Can they be treated as losses sustained within the taxable year and incurred by the plaintiff in his business? The transactions of the plaintiff in respect to the Du Pont Company's stock were in fact isolated transactions; that is to say, were distinctly unlike separate and apart from the usual methods pursued by the plaintiff in the business of conserving and enhancing his estate. Losses growing out of such isolated transactions ordinarily are not deductible. Mente v. Eisner, 2 Cir., 266 F. 161, 162, 11 A.L.R. 496. Aside from this, however, and as indicated heretofore, such losses to be deductible must be directly connected with or proximately resulting from the business of the taxpayer. The facts of the case at bar seem closely analogous to those in Mastin v. Commissioner, supra, wherein recovery was denied to the taxpayer, the court holding that the expenditures were capital expenditures made by the taxpayer with the hope of enhancing the value of his stock through increasing the asset value of the corporation.

In my opinion the plaintiff cannot be allowed to deduct the sums in question upon either of the grounds here discussed.

*B. As to the Narrower Ground Contended for by the Plaintiff, viz., that the Payments by him to the Delaware Company Enabled him to Conserve and Enhance his Estate:*

■ The plaintiff contends, however, that his position must be sustained upon a much narrower ground. He states this as follows. By borrowing stock, from the Delaware Company, the plaintiff was not compelled to expend money or securities to

cover his short transaction with the Christiana Company; such money or securities remained as part of his estate and conserved and enhanced it. Therefore the sums here sought as deductions, which are in fact the carrying charges paid by the plaintiff to the Delaware Company for the borrowed stock, are necessary and ordinary expenses incurred by him in carrying on his business.

This contention seems to me to be without merit. It will be observed that the argument must rest upon the fundamental proposition that the plaintiff's transaction with the Delaware Company was for profit. It is clear that the original transaction with the Christiana Company was not for profit, for in April, 1921, when the short sale might have been profitably covered, the plaintiff gave Christiana Company stock, having a value of $1,440,000, to the nine committeemen, and in effect thereby disavowed any intention of profiting by the short sale.

There is no reason why the plaintiff's dealings with the Delaware Company should be considered as being upon another or different basis. Certainly there is no evidence in the record which serves to indicate that the plaintiff entered into the transaction with the Delaware Company with any different end in view than that which actuated his dealings with the Christiana Company. The contract of October 25, 1929, specifically sets forth that the plaintiff did not contemplate at that time the closing of the short sale transaction. That the transaction with the Christiana Company was closed is a fact, but the phrase referred to tends to indicate that the plaintiff did not consider his dealings with the Delaware Company to be upon any different basis.

At the time of the short sale it would have been difficult and indeed expensive for the plaintiff to have purchased 9,000 shares of Du Pont Company stock in the open market. It was for this reason that the plaintiff borrowed the stock rather than purchased it. To this extent, and to such extent only, his action might have served to enhance his estate, but a finding that he sought to enhance his estate by such a method is incompatible with the facts made manifest by his entire course of dealing with the committeemen. Had he intended to enhance his estate by keeping invested money or securities which otherwise he would have had to pay out, he would not have embarked upon his entire course of conduct which from its beginning until the present time certainly has proven less profitable than covering his short transaction. The plaintiff's course of conduct was not trivial. It was based upon a broader plan.

The plaintiff was not engaging in a course of speculation which might prove profitable if he was able to cover his short sale at a lesser price upon some future date. The hope of profit is inherent in the ordinary short sale and under Dart v. Commissioner,[6] supra, carrying charges were deemed to be deductible. In the case at bar, however, when the short sale by reason of changing circumstances and market conditions gave the possibility of a profit, the plaintiff was quick to disavow such an advantage. Such action was entirely inconsistent and incompatible with his present narrow contention.

The plaintiff's original transaction with the committeemen, and his subsequent donation of the stock of the Christiana Company to them, was deemed by the plaintiff to be a prerequisite for the conservation and enhancement of his stock interest in the Du Pont Company, for by these steps he believed that a sound corporate management would be achieved. The end result sought by the plaintiff was profit by way of the enhancement of his stock interest, but he did not seek to profit by the intermediate steps whereby that result was to be achieved.

The plaintiff must also fail upon the narrower grounds which he has here asserted.

*3. As to the Contention that the Payments were Made for the Continued Use of Property in which the Plaintiff was without Equity, within the Meaning of subsection (a) of section 23, Revenue Act 1928, 26 U.S.C.A. § 23 and note:*

■■■ In view of the language of the subsection which requires rentals or payments to be made for the purposes of the trade or business of the taxpayer if they are to be deemed deductible, I am of the opinion that such rentals or payments must also result proximately from or be directly connected with the business of the taxpayer. Since the payments in the case at bar cannot be so

---

[6] In my opinion Dart v. Commissioner can be otherwise distinguished from the case at bar. Terbell v. Commissioner, 29 B.T.A. 44, affirmed per curiam, 2 Cir., 71 F.2d 1017, can likewise be distinguished.

described, this contention of the plaintiff must also be disposed of unfavorably to him upon the same grounds as are indicated in the ruling upon points (1) and (2), supra. I deem it desirable, none the less, to discuss briefly other contentions raised by the parties under this heading.

The shares of Du Pont Company stock borrowed by the plaintiff from the Delaware Company are still owing from the plaintiff to that company and the transaction is still open. These shares were received by the plaintiff pursuant to the terms of the contract of October 25, 1929, and he delivered these shares to the Christiana Company in fulfillment of his obligation.

The plaintiff contends that the 141,912 shares of stock of the Du Pont Company which he had borrowed from the Delaware Company were in continued use in his business as an investor, for by continuing his obligation to the Delaware Company unretired he was enabled to keep invested in other income producing securities as much money as it would cost him to discharge his obligation to the Delaware Company. He contends further that since he was required to pay to the Delaware Company, as a condition to such use, sums equivalent to dividends declared and taxes assessed, that therefore the total of these sums was deductible as rentals or other payments required within the terms of the statute.

These contentions are without merit: First, an obligation to pay is not property in so far as the obligor is concerned and cannot be so considered. Second, there was no "continued use or possession" of the stock by the plaintiff within the terms of the statute. He used the stock *once, in 1929,* for the purpose of discharging his obligation to the Christiana Company. He did not use it again. In fact, he could not use it again because he did not have possession of it after 1929. The sums which he now seeks to deduct were in fact paid by him pursuant to his contract with the Delaware Company and were simply part of the conditions under which the stock came into his hands. He had title to the stock when it was received by him from the Delaware Company and he transferred that title to the Christiana Company when he discharged his obligation to it. The statute is specific in that it allows as deductions from gross income only "rentals or other payments required to be made as a condition to the continued use or possession * * *, of property to which the plaintiff

has not taken or is not taking title or in which he has no equity."

Finally, the plaintiff contends that a fair interpretation of that portion of the statute just quoted requires the final "or" must be considered to have effect as a disjunctive preposition and that therefore the statute should be made to read as if the words were, "Rentals or other payments required to be made as a condition to the continued use of the property in which the taxpayer has no equity." However, he cites no authorities in support of this contention, and in my opinion it is contrary to the plain intendment of the statute, which states three conditions which must be fulfilled before the taxpayer is authorized to make the deduction sought. That such is the correct interpretation of the phrase "to which the taxpayer has not taken or is not taking title or in which he had no equity" is plain, because the first "or" in the phrase quoted clearly indicates that deductions for the use or possession of property cannot be made by the taxpayer if he has either taken title or is taking title to the property. In other words, the deduction cannot be availed of if the taxpayer has brought himself into either category prohibited by the statute. There is nothing upon the face of the statute which indicates any intention upon the part of Congress to impose a different interpretation in respect to the phrase "in which he has no equity" following the final use of the word "or."

*4. Are the Amounts Paid by the Plaintiff Interest on Indebtedness within the Meaning of Subsection (b) of Section 23, Revenue Act 1928, 26 U.S.C.A. § 23 and note?*

The plaintiff contends that the word "interest" means money paid for the forbearance of demanding payment of a debt, and that the word "debt" in turn means that which is due from one person to another, whether money, goods, or services. See Webster's New International Dictionary. Applying these definitions to the facts of the case at bar, the plaintiff urges that his obligation to return the shares of stock borrowed from the Delaware Company to it in kind is a debt, and that the sums paid by him, representing the dividends upon the stock and taxes, are interest on the debt, viz., the price of the forbearance by the Delaware Company to collect the stock.

In the case at bar, the plaintiff made a short sale. It is customary upon a short sale of stock for sums, the equivalent of

the dividends paid upon the shares borrowed, to be paid by the borrower to the lender of the stock until the short sale is covered. These sums, however, are not commonly referred to as interest, and a search discloses no case in which carrying charges upon a short sale have been treated as such. "Interest" is defined ordinarily as the compensation allowed by law or fixed by the parties for the use or forbearance of money. City of Lincoln, Nebraska, v. Ricketts, 8 Cir., 77 F.2d 425, 428; Redfield v. Ystalyfera Iron Co., 110 U.S. 174, 176, 3 S.Ct. 570, 28 L.Ed. 109; Loudon v. Taxing District of Shelby County, 104 U.S. 771, 774, 26 L.Ed. 923; Maryland Casualty Co. v. Omaha Electric Light & Power Co., 8 Cir., 157 F. 514. In respect to the word "interest" as used in federal taxing acts, the word is accepted as meaning the compensation allowed by law or fixed by parties, for use, or forbearance or detention of money. Fall River Electric Light Co. v. Commissioner, 23 B.T.A. 168, 171; Westerfield v. Rafferty, D.C., 4 F.2d 590, 594; Appeal of Joseph W. Bettendorf, 3 B.T.A. 378, 383; New Orleans Land Co. v. Commissioner, 29 B.T.A. 35, 38; Dry Dock Bank v. American Life Insurance & Trust Co., 3 N.Y. 344, 355; Hayes v. Commissioner, 261 Mass. 134, 158 N.E. 539; Title Guaranty & Surety Co. v. Klein, 3 Cir., 178 F. 689, 691, 29 L.R.A.,N.S., 620; Old Colony Railroad Co. v. Commissioner, 284 U.S. 552, 52 S.Ct. 211, 76 L.Ed. 484.

█ I therefore conclude that the sums paid by the plaintiff cannot be deemed to be interest on indebtedness within the terms of the statute.

*5. Are the Sums Paid Deductible as Incurred in a Transaction Entered into by the Plaintiff for Profit, though not Connected with his Business, Pursuant to the Provisions of Subsection (e) (2) of Section 23, Revenue Act 1928, 26 U.S.C.A. § 23 note?*

█ Can it fairly be said that the expenditure by the plaintiff of the sum here sought to be deducted was incurred in a transaction entered into by the plaintiff for profit "though not connected with the trade or business" of the plaintiff? Can the entire course of conduct of the plaintiff from December, 1919, until the end of the taxable year, 1931, be deemed to be a "transaction" within the meaning of the statute re-

ferred to? In my opinion the course of the plaintiff properly can be so defined, [7] but I am also of the opinion that the word "losses" as used by the statute refers not to interim sums required to be paid out by the taxpayer in the course of the transaction, but refers to actual losses suffered by the taxpayer as a result of the transaction. Such losses cannot be computed until a transaction has been completed or reaches a stage where the loss can be calculated. In the case at bar there is no evidence that the course of conduct of the plaintiff, considered as a whole, has resulted in any loss to him. Indeed, upon the contrary, there is some evidence of the enhancement of his estate through the advance in value of the Du Pont Company stock beneficially owned by him, but it is impossible, for the reasons set forth in heading (1) and (2), supra, to calculate for tax purposes the profit or loss of the plaintiff growing out of his whole course of conduct even when the short transaction be closed. In my opinion the expenditures of the plaintiff, speaking generally, were in the nature of capital expenditures, but they may not be added to the cost of the plaintiff's holding of Du Pont Company stock for the reason that these expenditures did not proximately result from and were not directly connected with the conservation and enhancement of the plaintiff's stock in the Du Pont Company.

Recovery must be denied to the plaintiff upon this ground as well.

### As to the Question of Double Taxation.

█ The plaintiff contends that the sum here in question has been subjected to double taxation, having been taxed once as part of the income of the Delaware Company and again as part of the income (since he was not allowed to deduct it) of the plaintiff. The statement that federal taxes have been assessed twice against the sum which the plaintiff here seeks to deduct is in fact correct. But under our system of income taxation taxes are assessed not against a fund but against the individual or corporation. Further it must be borne in mind that what the plaintiff did here, his entire course of conduct, was in fact most unusual and quite beyond the norm of business practice. No case has been found or cited which presents the precise questions here involved and

---

[7] See the Century Dictionary and Cyclopedia, Vol. VIII; Webster's New International Dictionary; Bouvier's Law Dictionary.

the facts here involved in all probability could not have been adverted to by the Congress.

Accordingly, judgment will be entered for the plaintiff in the sum of $54,439.52, with interest as stipulated by the parties. Judgment for the plaintiff in any larger sum will be refused.

Exceptions, if any, may be filed within thirty days.