## DU PONT v. DEPUTY et al.
### No. 6816.

Circuit Court of Appeals, Third Circuit.
March 28, 1939.

Aaron Finger, of Wilmington, Del., James S. Y. Ivins, of Washington, D. C., and George Wharton Pepper, of Philadelphia, Pa. (Richards, Layton & Finger, of Wilmington, Del., Ivins, Phillips, Graves & Barker, of Washington, D. C., and Pepper, Bodine, Stokes & Schoch, of Philadelphia, Pa., of counsel), for appellant.

James W. Morris, Asst. Atty. Gen., Sewall Key, Norman D. Keller, and Lester L. Gibson, Sp. Assts. to Atty. Gen., and John J. Morris, Jr., U. S. Atty., of Wilmington, Del., for appellees.

Before DAVIS, MARIS, and BUFFINGTON, Circuit Judges.

BUFFINGTON, Circuit Judge.

In the court below Pierre S. Du Pont brought suit against the Collector of Internal Revenue to recover taxes alleged to

be illegally collected from him. Jury was waived and the case tried by the judge. By stipulation it was agreed plaintiff was entitled to a judgment of $54,439.52 on one of the issues involved and to a judgment of $172,351.64 with interest (which would include the $54,439.52) if plaintiff was successful. in maintaining his claim therefor. The court entered judgment for plaintiff for $54,439.52 with interest and held that "judgment for the plaintiff in any larger sum will be refused." Thereupon plaintiff took this appeal.

After due consideration, we are of opinion that in the latter respect the court erred and the record should be remanded with instructions to amend its judgment by making it for $172,351.64 with interest from September 24, 1935, instead of for $54,439.52 allowed. The reasons therefor we now state.

The income taxes involved are for the year 1931 as found by the court: "In 1919, the plaintiff maintained an office in. Wilmington, Delaware, for the conduct of his business affairs. He had seven or eight employees in his office at that time. In 1920 he established an additional office in New York for the conduct of his business. He has maintained both such offices ever since such years. The expense of maintaining said offices was $36,310.67. * * * In 1919 he devoted more or less 50 per cent. of his time to his investments, which consisted in a large part of du Pont Company stock, although he had other investments in securities of different corporations. He changed his investments from time to time by the sale and purchase of securities but he was not a speculator and had practically no investments in brokerage accounts."

It appears that in 1919 the plaintiff borrowed from the Christiana Company, with a ten year maturity provision dating from December 23, 1919, nine thousand shares of the stock of the du Pont Company. The purpose of the taxpayer in so borrowing was found by the trial court as follows: "In order to insure good management of the affairs of the du Pont Company by enlisting permanently the services of able men, to encourage the executive committeemen in future effort to benefit themselves and other stockholders, and in recognition of the good work done by the executive committee for the company, the plaintiff, at the instance of the du Pont Company offered to sell 1000 shares of the common stock of the du Pont Company to each member of the executive committee of the du Pont Company. The plaintiff did not have the purpose or intention of making a profit by the specific transaction of the sale of the 1000 shares of the common stock of the du Pont Company to each of the committeemen, but he did have the purpose and intention to conserve and enhance the value of his own substantial beneficial stock holdings in the du Pont Company by endeavoring to secure for the du Pont Company a stable and efficient management. He deemed this result would be best accomplished by causing the members of the executive committee to become stockholders in the du Pont Company."

The court further found: "The agreement referred to was not entered into by the plaintiff with the Christiana Company with. the intention or purpose of making a profit thereby."

When the ten year maturity approached, the court found "he (du Pont) did not have 9000 shares of the du Pont Company stock available for delivery * * *. The market for du Pont Company stock at this time was thin. Nine thousand shares of common stock of the du Pont Company could not have been purchased in the open market without substantially raising the price per share."

■ As noted above, du Pont's loan contract with the Christiana Company expired by its own terms December 23, 1929, a time, as the court takes judicial notice, of grave financial panicky conditions and at which du Pont had not the stock to return.

In order to meet his contract at maturity du Pont, on October 25, 1929, entered into a written contract with the Delaware Realty & Investment Company, of which he was not a shareholder, and which, as found by the court, "was not entered into * * * with the intention or purpose of making a profit thereby", whereby that company agreed to loan to du Pont the shares of the du Pont Company required by him to return to the Christiana Company as provided in the then maturing contract of stock loan made in 1919.

The contract with Delaware further provided that within ten years from October 25, 1929, du Pont would return to the lending company the du Pont Company stock so borrowed and pending such return he would pay to the lending company an amount in money equivalent to all dividends declared by the du Pont Company on

its stock and reimburse Delaware for all national and state taxes paid by it.

In 1931, the taxable year here involved, du Pont so paid the lending company the equivalent dividends in the amount of $567,648 declared by the du Pont Company and also the $80,063.56, being the amount of the federal and state taxes paid by the Delaware Realty & Investment Company. It will thus appear that the total of these two sums, viz, $647,711.56, is the deduction which the plaintiff claims should be allowed him as provided by statute, viz., "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business."

It will thus be seen that the basic question involved is whether these payments made by du Pont during the taxable year of 1931 to the Delaware Realty & Investment Company were "necessary expenses" paid by him in carrying on his business.

██ The first question involved is whether the transactions stated constituted business. What, if anything, was du Pont's business? By the court's finding and by common understanding as evidenced by dictionary definition, business is "that which busies or engages time, attention or labor as a principal serious concern or interest; any particular occupation or employment habitually engaged in, especially for livelihood or gain." Adopting this view, the court below, as noted above, held—and rightly so— "The plaintiff's business was primarily that of conserving and enhancing his estate."

██ Accordingly, we are of opinion the payments in question made during the taxable year were ordinary and necessary expenses paid by du Pont during that year and as such are deductible. In view of these facts, we have not felt it necessary to discuss the question whether these sums —which were measured by the yardstick of dividends declared and taxes imposed— were in reality and substance "interest" payments. Nor are we constrained to discuss the voluminous papers and transactions bearing on the contract with the Christiana Company. Whatever they were, du Pont was in 1929 confronted by a situation wherein he was bound to return the stock borrowed from Christiana. In that serious situation he turned to a third and wholly alien company, the Delaware Realty & Investment Company, in which he was not a stockholder, and bargained with it for a stock loan for ten years which enabled him to perform his contract with Christiana, avoid the possibly disastrous enforcement by Christiana of its maturing obligation to return the borrowed stock, and at the same time gave him, through his contract with Delaware Realty & Investment Company a ten year loan of the borrowed stock with "the option to reduce or extinguish his indebtedness to Delaware Realty & Investment Company hereunder by the return to Delaware Realty & Investment Company of the shares owing to it in such amounts and at such times as the said Pierre S. du Pont may desire."

So regarding, the record is remanded to the court below for further procedure in accordance with this opinion.

MARIS, Circuit Judge, concurring.

Section 23 of the Revenue Act of 1928, 45 Stat. 799, 26 U.S.C.A. § 23, provides that in computing net income for income tax purposes there shall be allowed as deductions "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." The District Court found as a fact in this case that the plaintiff's business was primarily that of "conserving and enhancing his estate." 22 F.Supp. 589, 597. The finding was undoubtedly supported by ample evidence. If we premise this fact, as I think we must, it follows that the plaintiff was entitled, in computing his taxable net income for the year 1931, to deduct all the ordinary expenses paid during that year which were necessary to conserve his estate.

At the beginning of the year the plaintiff was faced with the fact that he owed the Delaware Realty and Investment Company 141,912 shares of common stock of E. I. du Pont de Nemours & Company. The history of this loan and the purposes for which the stock was borrowed are in my view wholly irrelevant. Whatever the reason, the fact remained that in 1931 he found himself under a binding obligation to the Delaware Company either to return the borrowed stock or to pay an amount equivalent to the dividends on the borrowed shares plus the taxes paid by the Delaware Company by reason of the loan. Since he no longer owned the shares borrowed the return of them would have necessarily involved the depletion of his estate by the amount required to purchase an equivalent number. He elected to take

the only other course which was open to him and paid to the Delaware Company the sum of $647,711.56, which represented the amount of the dividends paid on the stock plus the taxes of the Delaware Company with respect thereto.

This payment unquestionably conserved the plaintiff's estate. If it had not been made his invested funds would have faced the certainty of a serious diminution. The necessity of the expense is clear. The diminution of his principal which would have resulted if the payment had not been made would undoubtedly have carried with it an inevitable diminution in taxable income which might well have been substantially equivalent to the deduction here sought. The inherent justice of his claim will thus be seen.

I am equally satisfied that the expense was an ordinary one within the meaning of the statute. Certainly there is no expense in human experience which is more ordinary than that incurred by a debtor in fulfilling his agreement with his creditors. It is true that this expense usually takes the form of interest. It may well be that the expenditure which the plaintiff made in this case was a payment of interest in the broadest sense. It is certain, however, that it was compensation for the loan of stock which he had made and as such it was an ordinary and usual expense of a transaction of that character. Dart v. Commissioner of Internal Revenue, 4 Cir., 74 F.2d 845.

I accordingly concur in the conclusion reached by my colleagues that the amount of the judgment entered by the District Court in favor of the plaintiff should be increased from $54,439.52 to $172,351.64.