**Bob HINDES and wife, Dorothy Lee Hindes**

v.

**UNITED STATES of America.**

**Civ. A. No. 3125.**

United States District Court
W. D. Texas,
San Antonio Division.

Oct. 4, 1965.

Muckleroy McDonnold, San Antonio, Tex., for petitioners.

Robert L. Waters, Atty., Dept. of Justice Tax Division, Fort Worth, Tex., for defendant.

SPEARS, Chief Judge.

After having fully considered the stipulations of the parties, as well as the oral arguments and briefs of counsel submitted subsequent to the remand of this case, this Court is still of the opinion that the entire sum of $300,000 received by Tower Farm and Cattle Company, Inc. (including $35,000 over and above the $265,000 which represented the sale of land by the taxpayers to that corporation), should be considered as having been received by the taxpayers as a part of the substance of the transaction, in disregard of the corporate entity.[1]

In 1957, taxpayers (husband and wife) entered into negotiations for the sale of their ranch to a Mr. Sechrist. Upon inquiring of their attorney, Mr. Muckleroy McDonnold, as to the tax consequences of the sale, taxpayers learned that an installment sale would result in a considerably lower tax to them. Nevertheless, Sechrist wanted to pay cash, so a written earnest money contract was consummated whereby taxpayers agreed to sell and Sechrist agreed to buy the farm for a cash consideration of $300,000 (Sechrist made a deposit of $5,000), all without the knowledge of McDonnold until some time later. McDonnold suggested that a corporation be set up, that taxpayers sell their farm to the corporation on an installment basis, and that the corporation then sell to Sechrist for cash.

---

1. See Hindes v. United States (W.D.Tex.1963) 214 F.Supp. 583.

On May 17, 1957, the Tower Farm and Cattle Company, Inc., was chartered under the laws of Texas. The incorporators were the mother and father of Mr. Hindes, and Mr. McDonnold, the taxpayers' attorney. The taxpayers then sold their farm to the corporation for $265,000 on an installment basis, receiving approximately $20,000 in cash with the balance of the purchase price to be paid over a period of years. However, they did not retain a deed of trust or lien of any kind to secure the unpaid balance. Then the corporation conveyed the farm to Sechrist for $300,000. A $58,000 first mortgage on the farm was paid off, leaving a net to the corporation of $242,000, less the $20,000 first installment to the taxpayers. The corporation then made an unsecured loan at 4% to taxpayers in the amount of $200,000 to be repaid within five years with interest payable annually. The note contained no provision for foreclosure, acceleration, attorney's fees in case of default, or any other customary provisions, and the loan left the corporation with little or no cash. Other disbursements by the corporation were: real estate commission paid to two persons, one of whom was Mr. Hindes' brother, $14,427.00; expenses of sale such as documentary stamps, $265.65, and abstracting fee, $573.00; and expenses unique to the corporation such as organizational expense, $64.35, corporate income tax, $5,678.18, franchise tax, $911.10, and interest paid to taxpayers on the installment note, $790.-90. Upon the liquidation of the corporation, distributions were made to taxpayers' attorney in the amount of $7,467.-99, $1,000 of which was return of capital, and to Mr. Hindes' parents in the amount of $7,467.99, $1,000 of which was return of capital. The disbursements enumerated above total $35,646.16, plus $2,000 return of original capital investment to the stockholders. This Court found that the Tower Farm and Cattle Company, Inc., had no business purpose other than to act as a conduit through which taxpayers could pass title to their farm and thereby convert a cash sale already made into an installment sale. In short, this Court disregarded the form and looked to the substance of the transaction as a sale by taxpayers to Sechrist, and held that the agreement between taxpayers and their attorney on the one hand, and Sechrist, on the other, to the effect that the property involved would be transferred by taxpayers to the corporation, and by the corporation to Sechrist, did not constitute such a cancellation or release of the original earnest money contract as would give taxpayers the legal right to sell the property to anyone they desired.[2]

Upon appeal, the Fifth Circuit agreed with this Court to the extent of the proceeds of the sale by the taxpayers to the corporation in the sum of $265,000, and stated that a summary judgment in that amount would be in order on remand.[3] However, that Court reversed and remanded the case for consideration of the "fact" issue as to whether the additional $35,000 received by the corporation constitutes a part of the substance of the transaction and should be assessed to the taxpayers as part of the proceeds of the sale.

Obviously the corporation was set up primarily as a conduit to defer the receipt of monies obtained from a present cash sale of land, and the total selling price of the land was $300,000 which the corporation received in full. It necessarily follows that the taxpayers received constructively, if not actually, the full $300,000 proceeds from the sale. Any expenditures made in consummation of the sale, regardless of their impropriety and whether deductible for tax purposes or not, were initiated by the impending sale, and in furtherance of it.

In cases of tax avoidance, fraud, sham and other types of non bona fide transactions, and in cases involving no real business purpose, the courts have not hesitated to disregard the corporate

2. See note 1, supra, 214 F.Supp. at 584.

3. Hindes v. United States (5 Cir. 1964), 326 F.2d 150.

entity. The general rule is that the Government may look at actualities and, upon a determination that the form employed for doing business or carrying out the challenged tax event is unreal or a sham, may, as it sees fit, sustain or disregard the effect of the corporate fiction.[4] Even in cases which do not involve tax avoidance, the courts have held that where there was no real business purpose, such as the mere holding of title to property for the convenience of the stockholders, or for other personal reasons, the corporate entity should be disregarded.[5] It is clear that escaping taxation is not "business" in the ordinary meaning of that word, and that for a corporation to be recognized as a separate entity for purposes of taxation, it must be organized to engage in, or must be engaged in, some industrial, commercial or other business activity.[6]

■ The original purpose clause of the corporation here involved listed the buying and selling of land. Because of Texas law [7] which prohibits the formation of a corporation for the purpose of buying and selling real estate more than two miles outside of a city limits, it became necessary for this clause to be changed. The only business transacted by the corporation other than the purchase and resale of the land was the loan to taxpayers of $200,000. From the record it is clear that the corporation was set up primarily to sell this one piece of property. If the corporate entity is to be disregarded, it must be disregarded entirely for all purposes connected with any single transaction. It cannot be disregarded for some purposes and sustained for others where they involve the same transaction and the consequences of that transaction. Therefore, the Court is convinced that the only proper and logical conclusion to draw is that the $35,000 was an integral part of the substance of the transaction, and must be assessed to the taxpayers as part of the proceeds from the sale of the land.

■ The next question arises for the first time on remand. It concerns the manner in which the various disbursements comprising the total of $35,646.16 referred to above should be handled. Fees and expenses paid in connection with the acquisition or disposition of property, real or personal, are capital expenditures, and, in the case of a taxpayer not engaged in the business of buying and selling real estate, are deductible from the selling price in determining gain or loss on the ultimate disposition. Typical selling expenses would include abstract expenses and fees, commissions or broker's fees, legal fees, recording fees and stamp taxes, such as those involved here. They are generally those items paid or incurred to effect the sale of the property but not requiring anything to be done to the property itself.[8]

Despite the fact that one or the two recipients of the real estate commission was the brother of Mr. Hindes, there is no indication in the record that the commission, which amounted to less than 5% of the total selling price, was anything other than a bona fide payment for services rendered under an arms length agreement between Mr. Hindes, his brother, and his brother's associate.

■ Although the attorney treated the net amount he received upon the liquidation of the corporation as a profit from his investment, inasmuch as the corporate entity has been disregarded, this amount should be considered in the nature of a fee paid by the taxpayers for legal services rendered in connection with the sale of the land. It is quite clear from the record that the amount received by the attorney came as a direct result

---

4. Mertens, Law of Federal Income Taxation, Vol. 7, Section 38.10.

5. Mertens, Law of Federal Income Taxation, Vol. 7, Section 38.12.

6. Mertens, Law of Federal Income Taxation, Vol. 7, Section 38.14.

7. Vernon's Ann.Civ.St. art. 1302–4.05.

8. Mertens, Law of Federal Income Taxation, Vol. 4, Section 25.26; and 654 C.C.H. Standard Federal Tax Reports, Section 4430.0109.

of the services rendered by him in effecting the disposition of the land, and it cannot be considered to be unreasonable under all the circumstances.

■ In view of the foregoing this Court finds that the real estate commission and the legal fee, as well as the fees for the documentary stamps and the abstract, all of which were incurred to directly effect the sale of the land, are properly to be considered selling expenses, and are deductible in full from the selling price of the land by the taxpayers.

■ The expenses peculiar to the corporate entity, that is, the organizational expenses, the franchise tax, the interest and the income tax on the corporate income, cannot in any way be considered expenses of sale. The interest expense stipulated was the excess of the interest due on the $265,000 note of the corporation to the taxpayers over the interest due on the $200,000 note of the taxpayers to the corporation. Since any interest paid by the corporation to the taxpayers as expense was reportable by the taxpayers on their individual returns as income, any amended return filed in disregard of the corporate entity would not indicate any exchange of interest payments between the corporation and the taxpayers. Therefore, the question of deductibility of such interest payments has been rendered moot by the decision herein.

■ In view of the fact that the corporation was not created for any business purpose, and inasmuch as the corporate fiction is to be disregarded for tax purposes, it follows that the taxpayers are entitled to a refund of the federal income taxes paid on the corporate income; provided a formal claim therefor in the name of the corporation is filed within ten days after the judgment herein becomes final. The purpose of this suit was to resolve the tax liabilities of the taxpayers arising from a single transaction, namely, the sale of land. Consequently, a claim for a refund of the corporate income taxes, in the event the corporate entity should be disregarded was implicit in this litigation from its inception. This was sufficient to toll the running of the statute of limitations as to such claim.

■ Finally, the distribution in liquidation to the remaining stockholders, the parents of Mr. Hindes, must be assessed to the taxpayers. The receipt of this income by these stockholders constitutes at most an assignment of income attributable not to the parents but to the taxpayers.

Judgment will be entered accordingly.

This memorandum opinion will constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.