MILTON O. BROWN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brown v. Commissioner
Docket No. 8581-77.
United States Tax Court
T.C. Memo 1979-24; 1979 Tax Ct. Memo LEXIS 502; 38 T.C.M. (CCH) 91; T.C.M. (RIA) 79024; January 16, 1979, Filed Hugh L. Dick, for the petitioner. Jan R. Pierce, for the respondent. *503 QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent determined a deficiency for the taxable year 1973 in the amount of $ 5,690. The issue remaining for decision is whether petitioner suffered an ordinary loss on section 1244[1] stock in the amount of $ 20,600 in 1973 within section 1244 of the Internal Revenue Code or whether he is entitled to a capital loss on worthless securities under section 165(g). FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. At the time the petition was filed, Milton O. Brown, petitioner, resided in Portland, Oregon. His Federal income tax return for the calendar year 1973 was prepared and filed on the cash receipts and disbursements method with the Internal Revenue Center in Ogden, Utah. Petitioner is an attorney, who during 1973 was also involved in numerous other business activities. Sometime during the summer of 1973, petitioner and three other individuals *504 each pooled $ 25 and answered an advertisement by John A. Reppert for a claimed "blackjack strategy." The letter suggested to petitioner that Reppert had an even better deal than the blackjack strategy, i.e., a system for betting on the horses. This horse race betting system is hereinafter referred to as the "system." In response to Reppert's letter, petitioner contacted Reppert and expressed an interest in the system. Reppert then visited petitioner in Portland, Oregon, in early October 1973. He convinced petitioner that the system was sound at the time of the aforesaid meeting, and petitioner tentatively agreed to risk a certain amount wagering on the horses. After petitioner decided to risk his money using the system, he formed a corporation, Gold Pot, Inc., (hereinafter referred to as the "corporation"). Petitioner signed the Articles of Incorporation as an incorporator on October 16, 1973, and filed them with the Oregon State Corporation Commissioner on October 22, 1973.The stated purpose of the corporation was to "engage in every legal activity in the State of Oregon and including gambling where legalized and speculating in various enterprises." At the organizational *505 meeting and first meeting of the board of directors, the corporation ostensibly adopted a plan to issue section 1244 stock, consisting of 100 shares of common stock for a consideration of $ 20,600. On October 22, 1973, petitiner subscribed to buy all 100 shares of stock of Gold Pot, Inc., for $ 20,600. On October 23, 1973, the corporation offered to sell to the petitioner those 100 shares of stock and on October 26, 1973, petitioner deposited $ 21,000 into the checking account of the corporation at the Portland Metropolitan Branch of the United States National Bank. On October 26, 1973, the aforesaid bank issued four cashier's checks (numbers 65460, 65461, 65462 and 65464) for $ 5,000 each, or a total of $ 20,000, to petitioner drawn on Gold Pot, Inc.'s, account. On or about October 27, 1973, petitioner flew to Florida to meet Reppert. On October 28, 1973, Reppert and the corporation entered into an agreement (hereinafter referred to as the "agreement") wherein petitioner paid $ 20,000 in the form of the four cashier's checks to Reppert.
The agreement provided that Reppert was to place bets using the system at various horse race tracks over a three-year period or until such *506 time as the system ceased to return a profit. Reppert was to use funds totaling not less than $ 50,000 in making the wagers and the petitioner was to receive 25 percent of the net profit at the end of every two-week period. The net profit was defined as gross winnings minus total wagers lost. The agreement also provided that if petitioner had not received at least $ 20,000 from Reppert on or before April 28, 1974, Reppert would pay petitioner whatever sum was necessary to guarantee petitioner the total sum of $ 20,000, and such sum was due even if the system was not successful in making a net profit. On October 29, 1973, petitioner and Reppert entered into a Supplemental Agreement which made provision for testing the systems and provisions for setting up additional "banks." On December 20, 1973, Reppert informed petitioner by letter that he had lost the $ 50,000 bank plus $ 6,000 more and he asked for another $ 10,000 from petitioner. In a special meeting of the board of directors of the corporation held December 26, 1973, the corporation was dissolved. The petitioner made no serious effort to collect any money from Reppert. OPINION Petitioner Milton O. Brown became interested *507 in John A. Reppert's system for betting on the horses. He formed Gold Pot, Inc., and adopted a plan to issue section 1244 stock. Petitioner deposited $ 21,000 into the checking account of Gold Pot, Inc., and had four cashier's checks for $ 5,000 each totaling $ 20,000, drawn on that account issued to himself. Then petitioner through the corporation entered into a written agreement with Reppert. He gave Reppert $ 20,000 (the four cashier's checks) which Reppert was to use to wager on the horses. Some two months later, Reppert informed petitioner that the $ 20,000 had been lost gambling on the horses. As a result, the corporation was dissolved. In his income tax return for the taxable year 1973, petitioner claimed the $ 20,600 to be an ordinary loss under section 1244 of the Internal Revenue Code. The additional $ 600 was for petitioner's travel and lodging expenses incurred when he flew to Florida to sign the agreement with Reppert. In his amended pleadings, petitioner has taken the alternative position that if the Court finds that he did not suffer an ordinary loss under section 1244, then he suffered a capital loss under section 165(g). Respondent *508 takes the position that the stock in the corporation did not qualify as section 1244 stock because the corporation was not "largely an operating company" within the meaning of the regulations. Respondent also contends that the corporation was incorporated and administered as a device by which petitioner sought to avoid payment of income taxes. Furthermore, petitioner did not suffer a capital loss on worthless securities under section 165(g) because his loss was nothing more than a wagering loss under section 165(d), and therefore nondeductible. Section 1.1244(c)-1(g)(2), Income Tax Regs., provides in relevant part as follows: * * * Notwithstanding the provisions of this subparagraph and of subparagraph (1) of this paragraph, pursuant to the specific delegation of authority granted in section 1244(e) to prescribe such regulations as may be necessary to carry out the purposes of section 1244, ordinary loss treatment will not be available with respect to stock of a corporation whichis not largely an operating company within the five most recent taxable years (or such lesser period as the corporation is in existence) ending before the date of the loss. * * * (Emphasis supplied) *509 The requirement in the regulations that a corporation issuing stock under section 1244 be "largely an operating company" has been sustained by the courts. United States v. Bates,581 F.2d 575 (6th Cir. 1978); Davenport v. Commissioner,70 T.C. 922 (1978). In the instant case, Gold Pot, Inc., not only failed to meet the "operating company" test, but it was merely a "paper company" set up in an effort to avoid the limitation on the deduction of gambling losses. [2] As such, it is not entitled to recognition as a company whose stock qualifies under section 1244. Hill v. Commissioner,51 T.C. 621 (1969). See also Hindes v. United States,371 F.2d 650 (5th Cir. 1967), affg. in part and revg. in part 246 F. Supp. 147 (W.D. Texas, 1965) on remand from 326 F.2d 150 (5th Cir. 1964), revg. 214 F.Supp. 583 (W.D. Texas, 1963). Palmer v. Commissioner,354 F.2d 974 (1st Cir. 1965) affg. 44 T.C. 92 (1965). *510 Petitioner has merely attempted to convert a non-deductible wagering loss under section 165(d) into an ordinary loss by utilizing section 1244. We hold that petitioner is not allowed to deduct a gambling loss under the guise of section 1244. The same reasoning further applies to petitioner's alternative claim that he sustained a capital loss on account of the worthlessness of the stock of Gold Pot, Inc. The corporation was merely a sham set up to transmit funds to Reppert for wagering. The $ 20,000 loss was in fact a wagering loss under section 165(d) and the $ 600 travel expenses were personal expenses of petitioner. Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all other section references are to the Internal Revenue Code of 1954 as amended.↩
2. Although there was testimony to the effect that the corporation would eventually be used to market a book on Reppert's system, nothing had been done towards the preparation or publication of any book.↩