C. FREDERICK FRICK AND PATRICIA B. FRICK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Frick v. Commissioner
Docket No. 18650-81.
United States Tax Court
T.C. Memo 1983-733; 1983 Tax Ct. Memo LEXIS 57; 47 T.C.M. (CCH) 564; T.C.M. (RIA) 83733; December 8, 1983. C. Frederick Frick, pro se. Sheldon M. Kay, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent *60 determined a deficiency in the income tax due from petitioners for 1977 in the amount of $11,902 and an addition to tax under section 6653(a)[1] in the amount of $595. After a concession by the respondent, the following issues remain for our decision: (1) whether petitioners may deduct $5,230 as ordinary and necessary automobile expenses; (2) whether petitioners may deduct $861 for a home office; (3) whether petitioners incurred $745 of "sublet" (subcontracting) expenses; (4) whether certain debts became uncollectible and certain stocks became worthless in 1977; (5) whether petitioners made an excessive contribution to a Keogh plan; (6) whether certain expenses incident to the sale of real estate are properly deductible as itemized deductions; (7) whether petitioners may deduct $118 as legal fees; (8) whether petitioners may deduct amounts claimed for travel and entertainment in connection with their investments; (9) whether petitioners may deduct $175 as telephone business expenses; (10) whether petitioners made charitable contributions in excess of the amounts allowed *61 by the respondent; and (11) whether petitioners are liable for an addition to tax for negligence or intentional disregard of rules and regulations. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by reference. The petitioners resided in Wauwatosa, Wisconsin, when they filed their petition in this case. Petitioner, used in the singular, will refer to C. Frederick Frick. Petitioner C. Frederick Frick is self-employed. He is in the advertising business. In 1977, his gross income from that business totaled $2,345. He was also engaged in investment activities for his own account. Petitioner's investment income for 1977 consisted of $27,759.66 in interest from savings accounts and $1,861.37 in dividends from stocks. He reported no gains or losses from the sale of securities. (1) Automobile Expenses
The petitioners claimed $5,230 in automobile expenses for 1977, which amount included the following items: Gasoline
$1,385.00
Licenses
63.30
Insurance
546.35
Repairs
389.00
Oil & Lubrication
65.00
Tires & Battery
156.00
Depreciation
2,560.00
Parking & Toll Fees
65.00
$5,229.65
*62 At the trial petitioner produced cancelled checks for all of the deductions claimed for repairs, insurance, and licenses, but he was able to substantiate only $56.11 of the claimed gasoline expenditures. The petitioners owned three automopbiles in 1977. One automobile, a Chevrolet Camaro, was ordered and paid for in December 1977 but not delivered until March 1978. Petitioners claimed depreciation on all three automobiles in the total amount of $2,560 but without any explanation on the return for the useful life, salvage value, or method of depreciation used in arriving at this figure. Of the total amount, $1,550 was claimed for depreciation on the Camaro. Although petitioner and his wife drove the other two automobiles for both personal as well as business reasons, he made no allocation between business and personal use. The car driven by the petitioner was obviously used to a far greater degree for investment activities than in his advertising business. For example, he drove 5,000 miles to view his investment property in Arizona. However, he had no record of the total mileage driven for business purposes in 1977 or the amount driven with respect to the advertising business *63 as opposed to the investment activities. In his notice of deficiency, respondent disallowed in its entirety the deduction claimed for automobile expenses for failure to establish that the claimed amounts represented ordinary and necessary business expenses. (2) Home Office Expense
Petitioner maintained an office in the family room of his home in connection with his investment activities. The family room, which measured 22 by 28 feet, comprised approximately 25 percent of the total square footage in petitioner's house. The office was furnished with file cabinets, a desk, two chairs, and a television set. There was also a telephone in the room. Petitioner's investment activities consisted only of keeping track of his own accounts. He does not counsel other people on investments. The petitioners deducted $861 for home office expenses in 1977. This amount included 25 percent of the following items: Depreciation
$1,449.00
Insurance
63.00
Heat & Light
1,780.00
Repairs & Maintenance
152.00
$3,444.00
.25
$ 861.00
The record contains cancelled checks which substantiate $925.05 of the amount claimed for heat and light. Petitioner *64 also substantiated the amount claimed for insurance. In addition, petitioner submitted checks showing amounts paid for water, lawn and garden, and a snow master. In the notice of deficiency, respondent disallowed the deduction in full for failure to establish that it represented an ordinary and necessary business expense. (3) Sublet Expenses
In 1977 petitioner claimed $745 for "sublet expenses." He testified that this deduction was for payments to day workers in connection with Mr. Frick's advertising business. He offered no receipts evidencing the payments of such expenses nor did he recall the names of any of the recipients of these payments for temporary work. Respondent disallowed the amount claimed for "sublet expenses" for failure to substantiate and because petitioners did not establish that the amount, if paid, was an ordinary and necessary business expense. (4) Bad Debt and Worthless Stock Losses
(a) Jordan Notes
In 1967 Mr. J. Paul Jordan and his wife, Aileen Jordan, executed a note to petitioner in the amount of $4,450. This note provided for payments in each of the years 1968 through 1971. In November 1970, the petitioner obtained *65 a judgment in the amount of $2,642 against the Jordans on this note. In 1968 Mr. Jordan gave a note payable to Mr. Frick in the amount of $2,000. The note was executed in connection with the construction of an office building. It provided for repayment in 1969. When the note remained unpaid in 1970, the petitioner obtained a judgment against Mr. Jordan on the note in the amount of $2,241.67. On their 1977 tax return, the petitioners claimed a $4,000 ordinary loss from both of the Jordan notes. Respondent disallowed the loss because the petitioners had failed to show that the debts became uncollectible in 1977. (b) McMahon Note
In 1967 petitioner loaned his friend, L. M. McMahon, $1,000. A note from McMahon to petitioner provided that payment was due in 1968. McMahon subsequently had business reverses and is now deceased. The loan was never repaid. On their 1977 tax return, petitioners claimed a loss from McMahon in the amount of $1,000. Petitioners decided to claim the loss in 1977 because at that point Mr. Frick decided that he would never be repaid. Respondent disallowed the claimed loss because petitioners had failed to establish that the debt became worthless *66 in 1977. (c) Gulf-Western Warrants
During 1977 the petitioners owned 200 stock warrants which had been issued by Gulf-Western Corporation in 1968 or 1969. The warrants had an expiration date of January 31, 1978 and at the end of 1977 were held for the petitioners by their broker. They were delivered "off the account" by the broker on February 6, 1978 as worthless. Petitioners acquired the warrants, which were traded on the New York Stock Exchange, for $27.50 per warrant. On December 30, 1977, the last day of trading for the year, 213,600 warrants were sold at a high of $3,256 and a low of $1.128. The $1.128 was also the closing price. The warrants expired on January 31, 1978 and thereafter had no value. On their tax return for 1977, the petitioners claimed an ordinary loss for the $5,500 which they had paid for the Gulf-Western warrants. Respondent disallowed the loss on the grounds that the warrants were not worthless in 1977. (d) O. D. Industries
O. D. Industries, formerly known as Ocean Data Industries, Inc., is a company located in Coral Beach, Florida. It owns real estate in Florida and at the time of trial was planning to build a motel. In 1969, the *67 petitioners purchased stock in O. D. Industries which they still own. On their return for 1977, the petitioners claimed an ordinary loss of $6,299 on the stock because Mr. Frick could not find O. D. Industries listed in the securities information bulletin that he regularly read. Respondent disallowed the loss. (5) Keogh Contributions
In 1977 the petitioners claimed a deduction in the amount of $7,500 for payments to a Keogh retirement plan. Respondent limited the deduction to 15 percent of the $2,345 reported on the 1977 return for earned income from the advertising business and disallowed the balance. (6) Real Estate Sales Expenses
Petitioners sold two lots in 1977 and reported the capital gains realized from such sales. In connection with the sales they incurred commissions and other expenses totaling $4,916 which they claimed as itemized deductions on their 1977 tax return. The respondent disallowed the deductions as itemized deductions but allowed them as reductions in the amount realized on the sale of the properties. (7) Legal Expenses
In 1977 petitioners deducted $118 for legal expenses. Respondent concedes that $58.87 of the total *68 amount was properly deducted. In support of the balance of the deduction petitioners submitted five checks which were made out to various attorneys. The attorneys represented third parties in actions to collect debts owed by petitioners. The checks reflect the following detail: Amount of
Attorney-
Notation
Check
Payee
on Check
$42.85
Jerome Rendall
Paid in Full-Judgment
50.00
Thomas J. McNamara
New Berlin Hospital-
Paid in Full
15.80
Thomas J. McNamara
New Berlin Hospital
185.10
Trapp & Roth
Collection for Client
29.20
Thomas J. McNamara
New Berlin Hospital
Respondent disallowed the balance of the amount claimed because the petitioners had failed to establish that any part of the above checks represented ordinary and necessary business expenses. (8) Investor Expenses
In 1977 the petitioners deducted $2,295 as investor expenses of which $1,000 was represented by the estimated cost of a 20-day trip to inspect or view a parcel of investment property located in Arizona. The petitioner testified that the trip was necessary in order to oversee a neighbor's installation of water lines which ran through a portion of their property. *69 The property is undeveloped raw land and is not income producing. The petitioner calculated the expenses of the trip from Wisconsin to Arizona at $50 a day for 20 days for a total of $1,000. This included the daily lodging and meals while in Arizona. The only substantiation offered for the trip was recipts for gasoline totaling $56.11 but the automobile expenses incurred on the trip were not included in investor expenses. Instead they were deducted as part of the automobile expenses in issue one. Petitioner offered no substantiation for the remaining $1,295 except to state that it represented entertainment and other investment expenses which he estimated to be about $108 a month. Respondent disallowed the claimed investor expenses because it was not established that they were ordinary and necessary business expenses. (9) Telephone Expenses
For 1977 the petitioners deducted $175 in telephone expenses. This amount included telephone bills produced by the petitioner totaling $147.13 as well as his estimate of amounts spent on coin operated telephones. The petitioners have two telephones in their home, one in the family room and the other, an extension, in another *70 part of the house. The petitioners and their two children used both telephones in 1977 but no part of the expense was allocated to personal use. Respondent disallowed the deduction because it was not established that the amount represented an ordinary and necessary business expense. (10) Contributions
In 1977 the petitioners deducted $655 for contributions. A portion of the claimed deduction was for personal property allegedly donated to several charities. The petitioners produced no receipts or cancelled checks for the contributions claimed. Instead, they submitted general letters expressing appreciation for past donations or services. In his notice of deficiency the respondent allowed $126 of the amount claimed for charitable contributions and disallowed $529 for lack of substantiation. (11) Addition to Tax
In the notice of deficiency respondent determined that petitioners are liable for an addition to tax for negligence or intentional disregard of rules and regulations under section 6653(a). Miscellaneous Adjustments
In the notice of deficiency respondent made certain other adjustments for medical expenses, sales tax, and exemptions *71 and computed the liability of the petitioners for minimum tax and self-employment tax. Petitioners assigned no errors to these adjustments and computations either at the trial or on brief and we, therefore, consider them to be conceded. OPINION (1) Automobile Expenses
On this issue the first question we must decide is the deductibility under section 162 of automobile expenses that petitioner incurred in connection with his investment activities. The respondent argues that investment activities in and of themselves do not constitute the carrying on of a trade or business. Petitioner counters that, "* * * if one has been carrying on the business of investing for more than a quarter of a century as this petitioner has, it has become a trade, a way of life, and in fact the sole means of survival for petitioner and his family." [2]
Whether a taxpayer is *72 carrying on a trade or business requires an examination of all the facts in each case. Higgins v. Commissioner,312 U.S. 212, 217-218 (1941); Simonsen Industries, Inc. v. Commissioner,243 F.2d 407 (7th Cir. 1957). The Supreme Court has held that investing, in itself, does not constitute a trade or business. See Whipple v. Commissioner,373 U.S. 193 (1963); Higgins v. Commissioner,supra.
In Higgins, the taxpayer had a large sum invested in real estate, bonds and stock. He made permanent investments and hired a staff to help him oversee his fortune.The staff kept records, collected dividends and interest, made deposits, and reported to Mr. Higgins. After reviewing these facts, the Second Circuit stated that "[b]y the common speech of men, a person who does nothing beyond looking after his own investments and receiving the income from them is not conducting a trade or business." Higgins v. Commissioner,111 F.2d 795, 796-797 (2d Cir. 1940). In affirming, the Supreme Court concluded that no matter what the size of an estate or the staff required to oversee it, the mere keeping of records and collecting *73 investment income does not constitute a trade or business as a matter of law. In reaching its conclusion the Supreme Court set forth a fact and circumstances test for determining what constitutes carrying on a trade or business and pointed out that no particular fact or set of facts was sufficient, by itself, to satisfy that test. See also United States v. Pyne,313 U.S. 127 (1941), and City Bank Farmers Trust Co. v. Helvering,313 U.S. 121 (1941). Petitioner in our case, like the taxpayer in Higgins, did nothing except collect interest and dividends earned on his savings accounts and his stock portfolio.The fact that he carried on these activities for his own account is not crucial to our determination; rather, it is the passive nature of his activities that controls. See Ditunno v. Commissioner,80 T.C. 362 (1983). Petitioner's reliance on the decision of the Third Circuit in DuPont v. Deputy,103 F.2d 257 (3rd Cir. 1939) is misplace. In that case the Circuit Court adopted a dictionary definition of "business" and concluded that it meant "that which busies or engages time, attention or labor as a *74 principal serious concern or interest; any particular occupation * * * for livelihood or gain." The Circuit Court's decision was reversed by the Supreme Court in Deputy v. duPont,308 U.S. 488 (1940), without any consideration being given to the meaning of a trade or business and the following year the Supreme Court decided Higgins. We conclude, therefore, that petitioner's investment activities do not constitute a trade or business and consequently no part of the automobile expense associated with such activities is deductible as a trade or business expense under section 162. Respondent further contends that the investment portion of petitioner's automobile expenses are not deductible under section 212 because they do not bear a reasonable and proximate relation to the production of taxable income or to the management of property held for the production of income. Sec. 1.212-1(d), Income Tax Regs.We agree. Section 212(1) and (2) allows as a deduction all ordinary and necessary expenses paid or incurred for (1) the production or collection *75 of income and for (2) the management, conservation or maintenance of property held for the production of income. Petitioner's investment income in 1977 consisted almost entirely of interest earned on bank accounts and dividends paid by a number of corporations. Petitioners have failed to show any connection between their automobile expenses and the production or collection of this passive income. They have not shown that the expenses were either ordinary, i.e., customary, or necessary, or that they are appropriate and helpful to them in the production of income. See Welch v. Helvering,290 U.S. 111 (1933). [3]
Petitioners included in their deduction for automobile expense the transportation cost of the trip to view their real estate in Arizona. However, they have not established that this property was held for the production of income. See also Kinney v. Commissioner,66 T.C. 122 (1976). Furthermore, petitioners have failed to produce sufficient records to comply with section 274(d). *76 Section 274(d) provides that no deduction otherwise allowable under sections 162 or 212 will be allowed for a traveling expense unless the taxpayer can establish by adequate records or sufficient corroborating evidence the amount of the expense, the place visited, the date of the departure and return, and the business purpose of the trip. Sec. 1.274-5(b)(1) and (2), Income Tax Regs. Petitioners maintained no diary, account book or other record which might have established the foregoing elements. Sec. 1.274-5(c), Income Tax Regs. Their only corroborating evidence for the 5,000 mile trip was a few gasoline receipts in the amount of $56.11. We conclude, therefore, that the petitioners have also failed to satisfy the substantiation requirements of section 274(d) with respect to this part of the automobile expense. The petitioners have made no attempt to show what part, if any, of the automobile expense is allocable to the advertising business and we therefore must also sustain the respondent on this part of the issue. [4]
*77 (2) Home Office Expense
The respondent argues that the deduction for home office expense should be denied since no room in the residence was used exclusively and on a regular basis as the principal place of business for any trade or business. Petitioners rejoin that "our home has been our [o]ffice for more than twenty years." We agree with respondent.
No deduction under section 280A is allowable for the use of part of a dwelling in connection with an activity which is merely for the production of income within the meaning of section 212 but is not a trade or business under section 162. Curphey v. Commissioner,73 T.C. 766, 770 (1980).We have already decided that petitioners were not in the trade or business of making investments, the only activity for which the home office was used. Whipple v. Commissioner,373 U.S. 193 (1963), and Higgins v. Commissioner,312 U.S. 212 (1941). [5] Accordingly, respondent's determination on the home office expense is sustained. *78 (3) Sublet Expenses
Petitioner argues that in 1977 he engaged help from individuals at the Milwaukee Rescue Mission for his advertising business. Respondent rejoins that petitioner has failed to establish that he made any payments to temporary employees.
Deductions are a matter of legislative grace and taxpayers must satisfy the specific statutory requirements of the deductions they claim. New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934); Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). [6] These principles apply with equal force to any deduction claimed for amounts allegedly paid to individuals for casual labor. The petitioners, however, have produced no receipts or cancelled checks to verify that any amount was paid in 1977 for such labor. Mr. Frick testified that he wrote the payments down on a sheet of paper, but he failed to produce that paper and could not remember the names of the individuals. The petitioners have completely failed to satisfy their burden of proof on this issue. Respondent's determination is sustained. *79 (4) Bad Debts and Worthless Stock Losses
(a) Jordan Notes
Petitioners claimed a loss of $4,000 on two promissory notes executed to petitioners by J. Paul Jordan in 1967 and 1968.Respondent argues that petitioners have not established that the debts became worthless in 1977.
Section 166 generally governs the treatment of bad debts. [7] In order to be entitled to a deduction under section 166, a taxpayer must establish: (1) the existence of a bona fide debt owed to the taxpayer; (2) the basis in such debt; and (3) that such debt became worthless in whole or in part in the year the deduction is claimed. [8]Sec. 1.166-1, Income Tax Regs. Petitioners have the burden of proof with respect to each of these elements. Rule 142(a). *80 The year a debt becomes worthless is a question of fact. Boehm v. Commissioner,326 U.S. 287, 294 (1945). In order to determine whether a debt is worthless, the record must contain facts upon which we can made an independent judgment. Estate of Pachella v. Commissioner,37 T.C. 347, 353 (1961), affd. 310 F.2d 815 (3rd Cir. 1962). The record herein contains no evidence tending to show the inability of the Jordans to pay the debts in 1977. The unsupported conclusion of the petitioner that such is the case is not sufficient. Bryan v. Commissioner,32 T.C. 104 (1959), affd. 281 F.2d 238 (4th Cir. 1960). We conclude, therefore, that petitioners have not carried their burden on this issue and the respondent's determination is sustained. (b) McMahon Note
This claimed loss resulted from petitioner's loan to one McMahon who is now deceased. In evidence is McMahon's note to petitioner which is dated April 2, 1967, with a maturity date of April 2, 1968. The year a debt becomes worthless in whole or in *81 part is a question of fact. Boehm v. Commissioner,supra.The record in this case, however, contains no evidence of when Mr. McMahon died and whether, if ever, petitioners were notified by his estate that the loan was uncollectible. Petitioners have offered no evidence to show what means, if any, were used in an attempt to collect the debt but the law is clear that a taxpayer must establish that he has exhausted all reasonable means of collecting a debt before we can make a determination that it is worthless. A. Finkenberg's Sons, Inc. v. Commissioner,17 T.C. 973 (1951). As stated before, the petitioner's unsupported statement that the debt was worthless in 1977 is not sufficient. Bryan v. Commissioner,supra.
Accordingly, on the basis of the inadequate record before us, we find that petitioner has not established the McMahon note became worthless in 1977. (c) Gulf-Western Warrants
The Gulf-Western warrants were securities and in the hands of the petitioners were capital assets. Section 165(g) provides that if any *82 security which is a capital asset becomes worthless during the taxable year, the loss shall be treated as a loss from the sale or exchange of a capital asset on the last day of the taxable year. However, "a mere shrinkage in the value of stock owned by the taxpayer, even though extensive, does not give rise to a deduction under section 165(a) if the stock has any recognizable value on the date claimed as the date of loss." Sec. 1.165-4(a), Income Tax Regs.On the date of the claimed loss, the last business day of 1977, over 200,000 warrants sold for a high of $3.256 and a low of $1.128. Hence, the warrants had some recognizable value in 1977 and the loss is not allowable in that year. (d) O. D. Industries
Petitioner claimed a loss on his O. D. Industries stock because at the end of 1977 he was unable to locate any information on trading activity in the stock. Respondent argues that petitioner has not proven that the stock became worthless in 1977. As with the Gulf-Western warrants, the tax treatment of the O. D. Industries stock is governed by section 165(g) and the petitioner must establish that the stock had no recognizable value on the last *83 day of the year. Sec. 1.165-1(b), Income Tax Regs. Mr. Frick, however, testified that at the time of the trial he still owned stock in the company, and he stipulated that the corporation owned property in Florida and was planning to build a motel.
Petitioners have failed to establish that the stock became worthless in 1977 and the respondent's determination is sustained. (5) Keogh Contributions
In deducting $7,500 for a contribution to his Keogh plan, petitioner concluded that his "earned income" included capital gains as well as interest and dividends. Respondent demurs. He maintains that the only qualifying income is income from personal services which in this case would be limited to the amounts received from petitioner's advertising business. In 1977, section 404(e) provided that contributions to a qualified retirement plan for a self-employed person could not exceed the lesser of $7,500 or 15 percent of his earned income. Earned income was defined as being net earnings from self employment (as defined by section 1402(a)) but only with respect *84 to a trade or business in which personal services rendered by the taxpayer were a material income producing factor. Section 401(c) (2)(A). Earned income included only professional fees and other amounts received as compensation for personal services actually rendered. Sec. 1.401-10(c)(3), Income Tax Regs. Investment income was not included in earned income. This is apparent from the legislative history of section 404(c) which states that "[s]ince the objective of [a qualified plan for the self-employed] is to provide retirement benefits based on person services, inactive owners who derive their income entirely from investments would not be allowed to participate." S. Rept. No. 992, 87th Cong., 1st Sess. 12 (1961), 1962-3 C.B. 303, 314. Petitioner's only earned income was from his advertising business. His income from investments, including the sales of real estate, cannot be considered in determining the allowable contribution to his Keogh plan. Accordingly, we sustain respondent on this issue. (6) Real Estate Sales Expenses
In 1977, petitioners claimed as itemized deductions the commissions, escrow fees, title fees *85 and other expenses incurred in the sale of two parcels of real property. Respondent contends that these expenditures should be treated as reductions in the amount realized upon the sale of the properties. We agree with respondent.
Fees paid in connection with the disposition of real property are capital expenditures and are deductible from the selling price in determining gain or loss on the ultimate disposition. Hindes v. United States,246 F. Supp. 147, 150 (W.D. Tex. 1965), affd. in part, revd. in part, 371 F.2d 650 (5th Cir. 1966), cert. denied 386 U.S. 992 (1967); Thompson v. Commissioner,9 B.T.A. 1342 (1928). The expenses that the petitioners sought to take as itemized deductions are typical expenses incurred to accomplish the sale of property. Such expenses are capital in nature and must be deducted from the selling price to arrive at the amount realized on the sale for purposes of calculating capital gain. Hindes v. United States,supra.Section 1001. Accordingly, respondent's determination *86 on this issue is sustained. (7) Legal Expenses
Petitioners claimed a deduction for legal expenses in the amount of $118. Respondent conceded $58.87 of the deduction. The petitioners bear the burden of establishing the deductibility of the balance. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a).
This issue is entirely factual. The petitioners introduced five cancelled checks, all payable to attorneys, but offered no evidence to show that the checks represented ordinary and necessary trade or busness expenses. In fact, four of the five cancelled checks represent amounts paid to the attorneys for collection activities on behalf of their clients against the petitioners. Petitioner did not recall what the fifth check was for, although the notation thereon was "Paid in Full-Judgment." Respondent's determination is sustained. (8) Investor Expenses
Petitioners argue that they should be permitted to deduct as a business expense the testimated $50 per day for a total of 20 days which they paid for lodging and meals while on a trip to view their real property in Arizona. Petitioners did not submit any documentary evidence in support *87 of their claim. Respondent argues that petitiners have not met the substantiation requirements of section 274(d). We have already held that investment activities of the petitioners did not constitute a business. Consequently, the travel expenses are not deductible under section 162. We have also concluded that petitioners have failed to show that the purported expenditures were ordinary and necessary expenses under section 212 for the management, conservation, or maintenance of property held for the production of income. See Kinney v. Commissioner,66 T.C. 122 (1976). Petitioners do not claim that the expenses are deductible under any other section. We are unable to infer that simply because petitioners owned property in Arizona, the cost of their trip is deductible. [9]
Petitioners also deducted $1,295 for entertainment and other investor expenses. Since we have already decided that petitioners were not in the business of making investments, these expenses are not deductible as business expenses under section 162. They are also not deductible *88 under section 212 as expenses incurred for the production of income because petitioners have offered no concrete evidence of their nature. Mr. Frick merely testified that the $1,295 represented his estimate of the approximately $108 per month spent for entertaining and other investment expenses. On this record petitioners have failed to meet their burden of proof. Section 274(d) limits a deduction for entertainment expenses to those items which are substantiated by adequate records or by sufficient evidence corroborating the testimony of the taxpayer as to the amount of the expense, the time and place of the entertainment, the business purpose of the expense, and the business relationship of the taxpayer to the persons entertained. Sec. 1.274-5(b)(3), Income Tax Regs. In order to meet the adequate records requirement, a taxpayer must maintain an account book, diary, statement of expense, or similar record prepared contemporaneously with the expenditure. Sec. 1.274-5(c), Income Tax Regs. The petitioners produced no such evidence. *89 They also failed to produce any evidence which tended to corroborate their testimony that the claimed expenses were incurred for the purpose stated. Respondent's determination is sustained. (9) Telephone Expenses
Petitioners deducted $175 as telephone expense. Of this amount $147.13 was represented by cancelled checks to the telephone company in payment for the telephone located in the home. The balance was Mr. Frick's estimate of the amount of money he used to make calls from pay telephones. Respondent argues that petitioners have failed to meet their burden of proof. Rule 142(a). Petitioner admitted that he and his wife and two children used the telephone for personal calls. Yet he made no allocation between amounts spent for business purposes and amounts spent for personal calls. At trial, he merely stated that he felt he had understated the amount that would be deductible as telephone expense. Deductions are a matter of legislative grace, and petitioners must prove their entitlement thereto. New Colonial Ice Co. v. Helvering,supra;Rule 142(a). We are satisfied, however, that the telephone was used to some extent in his advertising *90 business. Therefore, under Cohan v. Commissioner,39 F.2d 540, 544 (2d Cir. 1930), and weighing heavily against petitioners for their failure to keep adequate records, we conclude that $25 of the claimed amount is deductible. (10) Contributions
Respondent allowed $126 of the $655 deducted by the petitioners for charitable contributions in 1977. Respondent disallowed the remainder for lack of substantiation.As previously stated, deductions are a matter of legislative grace, and the taxpayer has the burden of establishing that he is entitled to them. New Colonial Ice Co. v. Helvering,supra;Welch v. Helvering,290 U.S. 111 (1933). The evidence on this issue is most unsatisfactory. A letter from the Goodwill Rehabilitation Center thanks the petitioners "for the items of clothing and shoes you said you donated at that time at our Mayfair trailer." [Emphasis added.] Letters from the Muscular Dystrophy Association and the American Cancer Society do not establish that the petitioners made any contributions in 1977. Similarly, postcards respecting the Jerry Lewis Labor Day Telethon do not show that petitioners *91 made any charitable contributions in 1977. After a review of the record, we hold that petitioners have failed to establish that they made charitable contributions in 1977 in excess of the amounts allowed by the respondent. (11) Addition to Tax
Respondent determined that petitioners were liable for the addition to tax provided by section 6653(a) for negligence or intentional disregard of rules and regulations. Petitioners also bear the burden of proof on this issue. Davis v. Commissioner,81 T.C. 806 (1983); Rosano v. Commissioner,46 T.C. 681, 688 (1966). Section 6001 requires a taxpayer to maintain records sufficient to establish the amount of any deduction claimed by him on his tax return. See sections 1.6001-1(a) and 1.6001-1(e), Income Tax Regs. When a taxpayer fails to maintain or make available such records, the negligence addition may be asserted. Zivnuska v. Commissioner,33 T.C. 226 (1959).Petitioners have not satisfied the record keeping requirements of section 6001. For instance, many of their deductions *92 for automobile expense, investment expense, sublet expense and contributions were claimed without any record to establish the deduction.
They also deducted a contribution to their Keogh plan which was greatly in excess of the amount allowed under the statute. They also deducted as legal fees amounts paid to attorneys who did not represent them but in fact represented other parties who were attempting to collect debts owed by petitioners. The petitioners deducted their entire telephone bills and more but admitted at the trial that the whole family used the telephone for personal calls. They deducted all the expenses of maintaining their automobiles, including depreciation on an automobile that they did not possess until the folliwing year. They repeatedly attempted to deduct as ordinary expense items which were clearly capital items. They also deducted losses from worthless stock and bad debts without any proof that the losses occurred in 1977. In view of all of the foregoing, we are convinced that the petitioners were not only negligent in the preparation of their 1977 return but also intentionally disregarded numerous rules and regulations in its preparation and consequently *93 are clearly liable for the addition to tax provided by section 6653(a). Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, during the year in issue.↩
2. This statement on brief is in direct contradiction both to petitioner's tax return, wherein he entered on Schedule C income of $2,345 from his advertising business, and to his testimony about his advertising business.↩
3. See also Walters v. Commissioner,T.C. Memo. 1969-5↩.
4. We further note that petitioner failed to make an allocation between business and personal use of his two automobiles; that petitioner substantiated only about 25 percent of claimed expenses excluding depreciation; and that the claimed depreciation of $1,550 for the Chevrolet Camaro would be disallowed in any event as the car was not placed in service until March of 1978. Sec. 1.167(a)-(10)(b), Income Tax Regs.↩
5. See also Strasser v. Commissioner,T.C. Memo. 1981-523 and Walters v. Commissioner,T.C. Memo. 1969-5↩.
6. All rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise provided.↩
7. A bad debt evidenced by a "security" is generally governed by section 165(g). Sections 165 and 166 are mutually exclusive. Spring City Foundry Co. v. Commissioner,292 U.S. 182, 189↩ (1934). 8. Business debts and nonbusiness debts are subject to different treatment under section 166↩, but since it is unnecessary to our determinations herein, we make no findings as to whether any of petitioners' "debts" constitute business or nonbusiness bad debts.
9. In any event, petitioners have utterly failed to meet the substantiation requirements of section 274(d)↩.